Alabama & Vicksburg Ry. Co. *v.* Nettie M. Davis.

1. Contributory Negligence. *Driver of vehicle. Imputing to occupant.*

The contributory negligence of a driver in venturing upon a crossing before an approaching train, whereby his vehicle is struck, is not imputable to a temporary occupant of the vehicle, who is being driven in it by the mere invitation of its owner, and who has no control over the driver, and no reason to believe that he is imprudent.

2. Same. *Occupant of vehicle. Railroads. Case.*

Plaintiff, a young lady, was in a buggy with her little sister in her lap. Her escort, a young man, who was driving, negligently attempted to go over defendant's track, at a crossing, in front of a running train. Just before reaching the track, plaintiff, seeing the danger of the approaching train, cried out: "Surely, you do not intend to cross!" To this he replied, "Yes." Thereupon she screamed and seized him. There was not time to decide her course and get out before the buggy was struck by the train, running at an unlawful speed, and she was injured. The team was gentle, but she had no control over it or the driver, and had no reason to believe him an imprudent person. *Held*, that she was not guilty of contributory negligence, and could recover.

3. Practice. *Remittitur to avoid new trial. Conclusiveness.*

Where the circuit court, deeming a verdict excessive, announces that it will set it aside and award a new trial, unless a *remittitur* is entered, whereupon plaintiff remits, but excepts to the action of the court as coercive, he is concluded by his election, and cannot assign the action of the court for error.

FROM the circuit court of the first district of Hinds county. HON. J. B. CHRISMAN, Judge.

Appellee, a young lady living in the village of Bolton, had promised, if sent for, to attend services at a country church, and assist with the music. The promise was made to a Mrs. McAlpin, and on Saturday Tom McAlpin, her son, who was an acquaintance of appellee, notified her that he would come for her the next morning. He was a young man, about nineteen years old, and accustomed to drive. According to promise, he drove into Bolton for appellee, having procured his mother's buggy and a horse belonging to his sister. After reaching Bolton, he went to the station of the Alabama and Vicksburg Railway Co., and noticed on the bulletin-board that the mail-train was an hour and forty minutes late. He then went for appellee to her home, which was near the station, and they started together to the church, appellee occupying the seat beside McAlpin, and holding in her lap her little sister. She knew that the train was usually due about that time, but had heard that it was late that morning. The public street of the village, along which they had to drive, crossed the track of the railroad near the depot. The crossing was in a cut of the railroad, and the street made a descent on each side of the track, so that it was difficult to turn a buggy around after beginning the descent. The bank of this cut in the street, together with certain intervening objects, shut off the view of the train approaching the crossing. As the buggy neared the crossing, McAlpin and plaintiff heard the whistle of an incoming passenger-train. The plaintiff said, " Surely, you do not intend to cross ! " McAlpin replied, "I think I can make it." Whereupon, plaintiff screamed, and seized the arm of McAlpin. This occurred fifteen or twenty feet from the track, and when the engine was probably less than one hundred feet from the crossing. McAlpin did not stop, and when he reached a point where the engine could be seen, he was, as he testifies, nearly on the track, and

·could not stop. The train was moving rapidly, its speed va_riously estimated from six to fifteen miles an hour. The engineer gave the customary signals on nearing the station, and, when he discovered the peril of the vehicle and its occupants, he applied the air-brakes. The engine struck the buggy, throwing the occupants violently out and to the ground, and plaintiff was severely bruised, and for several months suffered very severely. Apart from an occasional swelling in the ankle, it was not shown that the injuries had been of a lasting nature.

She brought this action against the appellant, alleging that the injuries were caused by the negligence of its servants in charge of the train, and laying her damages at $10,000. It is not necessary to set out the evidence with greater detail, or to notice the errors assigned to the action of the court on the evidence and the instructions, since they relate mainly to points not passed on by the court in the opinion.

The jury returned a verdict for plaintiff for $4,000, whereupon defendant moved to set it aside and for a new trial, among other grounds, because the damages awarded were excessive. The court, being of the opinion that the damages were excessive to the amount of $2,000, announced that, for· that reason alone, it would grant a new trial, unless plaintiff entered a *remittitur*. Thereupon, counsel for plaintiff insisted that the court should direct the *remittitur*, so as not to compel plaintiff to elect to remit on penalty of suffering a new trial. But the court refused to do so, on the ground that it had no power, and to this plaintiff excepted. Plaintiff then ·requested the court not to set aside the verdict *in toto*, but to confine its action to setting aside the award of damages, and grant a new trial as to the *quantum* of· damages only. This the court refused to do, and plaintiff again excepted, but, rather than suffer a new trial, entered the *remittitur*. Thereupon, the motion for new trial was overruled, and judgment was entered for $2,000, and from this defendant appeals, and plaintiff prosecutes a cross-appeal, assigning for error the court's action in regard to the *remittitur*.

*Nugent & Mc Willie*, for appellant and cross-appellee.

Appellant can only be liable if its negligence is the *proximate* cause of the injury. An act is the proximate cause of an event when, in the natural order of things, and under the particular circumstances surrounding it, such act would necessarily produce the event. 4 Am. L. Rev., 204; *Milwaukee, etc., R. R. Co.* v. *Kellogg*, 94 U. S., 469. In this case there was a sufficient and independent cause operating between the wrong and the injury, and that was the negligence of Mc-Alpin, the driver. *Ins. Co.* v. *Boon*, 95 U. S., 117; 32 Me., 52; 38 *Ib.*, 207; 42 Am. & Eng. R. R. Cas., 107. His negligence is imputable to plaintiff. The exception is where the relation of master and servant, or principal and agent, does not exist, or where the passenger is seated away from the driver, or separated from him by an inclosure, and is without opportunity to discover danger and to inform the driver of it. 66 N. Y., 11. In this case, plaintiff had equal opportunities with the driver to discover the danger. 37 Am. & Eng. R. R. Cas., 479 s.c. 111 N. Y., 199; 10 Atl. Rep., 692; 37 Am. & Eng. R. R. Cas., 33. See especially *State* v. *Burlington R. R. Co.*, 32 N. W. Rep., 264; 26 Fed. Rep., 27; 39 Am. & Eng. R. R. Cas., 697; 114 Pa., 643.

These cases show that *Thorogood* v. *Bryan* does not furnish a satisfactory guide. It has been disapproved in *Little* v. *Hackett*, 116 U. S., 366. Since, then, there is no rule of universal application; each case must be decided on its peculiar facts.

McAlpin was the servant of plaintiff. 143 Mass., 535; 63 Tex., 77; 114 Ill., 325; 48 Ark., 177; McKinney, Fellow-servants, § 19; 14 Am. & Eng. Enc. L., 751; Wood, Master and Servant, § 7. It is held that a person is liable for the negligence of a mere volunteer. 30 Eng. Law & Eq., 167; 26 Vt., 178; 8 Ad. & El., 109; 7 C. & P., 66; 13 Allen, 58; 6 N. Y., 435; 22 *Ib.*, 355; 8 Barb., 354. The real test is whether the act is done by one for another, however trivial, with the knowledge of such other, or his assent, express or

implied, even though the act was not requested. The presumption is that McAlpin was plaintiff's servant. 17 Mo. App., 212.

But plaintiff was herself guilty of negligence. She did not look and listen. She did not try to exercise any control over the driver. She knew the train was due. Neither she nor McAlpin was put off guard by the bulletin-board showing the train late. See 27 N. E. Rep., 161.

*Calhoon & Green,* for appellee and cross-appellant.

There is no question as to the gross negligence of the railroad company. There was no contributory negligence on the part of plaintiff. The doctrine is that one cannot recover for the negligence of another, if, by ordinary care, he could have avoided the injury. *V. & M. R. R. Co.* v. *McGowan,* 62 Miss., 682. There was no negligence in being on the crossing. It is there for travelers, and they are not bound to anticipate negligence, or to assume that the law will be violated. *Ib.* See 1 Sherm. & Redf., Neg., § 92; *Cont. Imp. Co.* v. *Stead,* 95 U. S., 161; *Fulmer* v. *R. R. Co.,* 68 Miss., 355; 2 Sherm. & Redf., Neg., §§ 468, 482.

Relying on the truth of the bulletin, plaintiff had a right to assume that the train would not come for an hour or more. The duty of looking and listening requires only ordinary care; and what is ordinary care is for the jury. 61 Wis., 457; 100 Ill., 603; 88 N. Y., 13; 34 Iowa, 161. If, however, contributory negligence is as defined in *Alexander* v. *R. R. Co.,* 62 Miss., 496, and the McGowan case, *supra,* these authorities are foreign to the discussion.

Plaintiff was not negligent. She had no control over the driver, or the movements of the vehicle. Finding them in peril, she remonstrated at once, and seized his arm. She did all she could in the emergency.

If McAlpin, the driver, was negligent, his negligence is not imputable to plaintiff. He was not her servant, and was not in any way under her control. He was not even selected

by her to drive the vehicle. For discussion of the doctrine, see 4 Am. & Eng. Enc. L., 82; *Little* v. *Hackett*, 116 U. S., 366; *Elyton* v. *Mingea*, 89 Ala., 521. These overruled the rule of liability as stated in *Thorogood* v. *Bryan*.

It was error for the court to require a *remittitur*, upon penalty of setting aside the whole verdict. There were two separable issues tried—liability and damages. If the damages given were excessive, a new trial should have been confined to the amount of damages. The court should not substitute its judgment for that of the jury, and coerce a *remittitur*. The plaintiff, having excepted to the action of the court, now asks this court to correct the judgment and enter judgment here on the verdict; or, if it thinks the verdict excessive, remand the cause for a new writ of inquiry as to damages. *Walker* v. *Commissioners*, 1 Smed. & M., 372; 13 *Ib.*, 269, 336; *Merrill* v. *Melchoir*, 30 Miss., 516; *Spratley* v. *Kitchens*, 55 Miss., 578; 12 Pick., 287; 20 *Ib.*, 461; 84 N. C., 201.

WOODS, J., delivered the opinion of the court.

From all the evidence in the record before us, it is certain that McAlpin was guilty of contributory negligence, and, from the same evidence, the negligence of appellant is also indisputable.

By imputation, was McAlpin's negligence a bar to appellee's recovery? Was McAlpin the servant of appellee? Did the relation of master and servant, or principal and agent, subsist between them?

The appellee was, by invitation, being transported in a private conveyance on the occasion of the injury complained of. She was being driven in this private conveyance at the invitation of McAlpin or McAlpin's mother. The team and vehicle were either furnished by McAlpin or McAlpin's mother, and the appellee was, by invitation, being driven by McAlpin from appellee's residence to a church in the country not far away. The team was gentle, and there was nothing to lead

the appellee to believe that McAlpin was not a prudent and safe driver. The appellee was not the owner or hirer of the team, vehicle or driver. She had no control, or right of control, over the team, and none over the driver, other than that moral control which one human being may be supposed to have over another when the two are brought into close association. We cannot agree that the temporary occupancy of a seat in the vehicle under the conditions and circumstances shown to exist in this case, created such relationship between the appellee and McAlpin as made McAlpin's negligence imputable to appellee, or would have rendered her liable for McAlpin's negligence if he had injured a third person without appellee's connivance or direction. We do not think that McAlpin was the servant or agent of appellee, and his negligence is not, therefore, imputable to her.

Was appellee negligent herself? We cannot disturb the finding of the jury on this point. Though appellee never saw the train at all, yet, when at the foot of the cut, she was made aware of the near approach of a train, and discovered the purpose of McAlpin to attempt to cross, while there was still ample time and space in which to stop, if McAlpin had heeded her wish, appellee did cry out to McAlpin, "Surely, you do not intend to cross!" and, on his replying he thought he could do so, appellee instantly screamed and caught him, but the train was, by that time, upon them. It is to be remembered that appellee had seated upon her lap her sister, aged ten or twelve years, and that, if she had desired to spring from the conveyance on seeing McAlpin's recklessness, she could not have done so without first throwing out the girl, or constraining her to jump out, and, that done, she would have had no time for determining the probability of securing her own safety by springing out. It is doubtful if there was time for her to disencumber herself of her sister and spring from the carriage; but, if it is possible that she might have flung out her sister and have made the effort to save herself, still, if the jury was of opinion that she had no

sufficient time for deliberation and action, but, paralyzed with fear, she, for the instant, did nothing, the verdict might have yet been properly for her on this issue. She was not bound to exercise that care and caution and take such prudent action as it may now appear would or might have produced a different result. She was only required to behave herself as the average woman of reason would have done, situated as she then was. The jury, under proper instructions, has passed upon the question, and we are not disposed to disagree with the jury on its finding.

The cross-appeal is not maintainable. The consent to a *remittitur* was not compulsorily obtained. The appellee might have declined to yield to what she thought the arbitrary course of the court, and, if the court had persisted, and had actually set aside the verdict and awarded a new trial, by taking appropriate steps the appellee might have had this court rectify the arbitrary action complained of, if, indeed, it had been ascertained to be wrongful. The appellee prudently chose not to take the hazard of that heroic course, and must be held to have voluntarily consented to the *remittitur*. She made her election to take the sure sum of $2,000 rather than incur the chances of total loss, and we are not prepared to say she did not act wisely in making that election.

*Affirmed.*