GULF & S. I. R. Co. *v.* ADKINSON.

[77 South. 954, Division A.]

1. HIGHWAYS. *Prescription.*

   A highway is a road or way upon which all persons have the right to travel at pleasure. It is the right of all persons to travel upon a road and not merely their traveling upon it, that makes it a public road or highway.

2. SAME.

   This right may be acquired in various ways, one of which is by prescription; but in order for it to be so acquired, the road must be habitually used by the public in general for a period of ten years; and such user must be accompanied by evidence, other than mere travel thereon, or a claim by the public of the right so to do.

3. TRIAL. *Instructions. Support by evidence.*

   Where in a suit against a railroad company, for injuries sustained while driving on a road crossing its track, the only evidence that the road upon which plaintiff was traveling at the time of the injury was, that the road was formerly worked by the public

road hands of that vicinity, but when or for how long a period and by what authority, did not appear and for aught that appeared to the contrary, the travel over the road was by the sufferance or permission of the owners of the land over which it passed. In such case an instruction for plaintiff, that if the road in question was a highway, the railroad's servants were negligent in failing to ring the bell or blow the whistle as provided by section 4045, Code 1906, was erroneous.

4. RAILROADS. *Accidents at crossings. Duty to stop, look and listen.*
A traveler upon a road, crossing a railroad track is guilty of gross negligence in proceeding to cross the track without stopping, looking or listening.

5. TRIAL. *Instructions. Characterization of negligence.*
The degree of negligence by an injured person is ordinarily a question for the jury, but where he exercises no care whatever, for his own safety, the court can very properly, by instruction, characterize his negligence as gross.

APPEAL from the circuit court of Stone county.
HON. JAS. H. NEVILLE, Judge.

Suit by J. S. Adkinson against the Gulf & Ship Island Railroad Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*T. J. Wills,* for appellant.

This case presents to the court for consideration two questions of substantive law: First, is an old, abandoned road used principally as a farm road, over which members of the public occasionally pass for convenience, a highway within the contemplation of section 4045, of the Code of 1906. Second, is a person approaching a railroad crossing from behind an obstruction that shuts him from view of an approaching train, charged with the duty of stopping, looking, or listening for an approaching train before going upon the railroad track.

Section 4045 of the Code of 1906, is in this language: "Every Railroad company shall cause each locomotive

engine run by it to be provided with a bell of at least thirty pounds weight, or a steam whistle which can be heard distinctly at a distance of three hundred yards, and shall cause the bell to be rung, or the whistle to be blown at the distance of at least three hundred yards from the place where the railroad crosses over any highway or street; and the bell shall be kept ringing, or the whistle shall be kept blowing, until the engine has stopped or crosses the highway or street.''

A definition of the word highway as used in this section is essential to the proper decision of the first question presented by this case. This court stated in the case of *Mobile & Ohio Railroad Company* v. *The State,* 51 Miss. 137.

''Webster defines a street to be a city road, and a highway to be a public road, with respect to the use there can be no doubt that they are both public. But we think the statute, under consideration, means by the term highway, a public road in the country, and not a street in a city or town.''

The court in this case was construing section 2424 of the Code of 1871, and this section is brought forward as section 4050 of the Code of 1906, and the word highway is used in the same sense there, as was the word used in section 2422 of the Code of 1871, which is brought forward and is section 4045 of the Code of 1906, under consideration.

Counsel for the plaintiff conceived the idea that there was a difference in the meaning of highway and public highway, and was able to convince the court that public roads were public highways, and that highway embraced not only public roads but private roads, over which members of the public occasionally passed. This is an erroneous interpretation.

''A highway is one to which all inhabitants of the state have a common and equal right to travel, and in which they have a common and at least general interest in keeping unobstructed.'' *Talbott* v. *Richard, etc., R.*

*Co.*, 31 Gratt. (Va.), 685. If a highway is a way opened to the public then it would be tautology ·to say a public highway, which would be equivalent to saying a public way.. ''Highway is a passage road, or street which every citizen has a right to use, and is therefore necessarily public.'' *Walton* v. *St. Louis, etc., R. Co.*, 67 Mo. 56; *Jenkins* v. *Chicago, etc., R. Co.*, 27 Mo. App. 578.

There are no highways in Mississippi except the roads in the country that are built and maintained by public authority, and streets, in cities and towns that are subject to municipal control. In England in the early history of the country the acts that gave to a way such dignity as to make it a highway was a special grant or decree of the king giving to the people a right of usage of the way over the land as against the feudal lords who held title as vassals of the king; or such usage of the way by the people, as a king's way, for a time beyond which the memory of men runneth not to the contrary; which implied a grant by the king. It was the sovereign decree, either actual or implied, giving the people a right of passage as against the owner of the land that changed the dignity of the way from a private way to that of a highway. In this state it is the assumption of control and maintenance by public authority that gives a way the dignity of a highway and not the amount of travel by the public over the way. As was stated in the case of *In re City of New York,* 31 N. E. 1043:

''It has been truly said it is not the amount of travel upon a highway which distinguishes it as public, instead of a private, road. A private road might have the larger amount. It is the right to travel upon it by all the world, and not the exercise of the right, which makes is a public highway.''

Section 4045, requires the blowing of the whistle or the ringing of the bell in approaching crossings over any highway or street. Section 4049 prohibits the ob-

struction of travel upon highways for a longer period than five minutes and provides penalty for failure to observe this or either of the four preceding sections, which include section 4045. Did the legislature intend that the word highway here used should embrace roads and ways other than public roads? Would it be reasonable and right to inflict punishment, herein prescribed, on the Railroad company for failure to give the signal prescribed for highway or street crossing, for the failure to give the signal at private crossings or at crossings not public road crossings; and that too, when the Railroad company has as its guide, the definition of this court of the word highway, to mean a public road in the country? If the Railroad is not subject to this penalty except for its failure to give a signal at crossing of public roads, then it is not required to give the signal at any crossing except public road crossings.

The defendant was not required to give the crossing signal prescribed for highway crossings, even if the crossing had at one time been a public road crossing, since it is shown it had been discontinued as a public road. The plaintiff himself admits that it was not a public road, and if it had ever been, it had long since ceased to exist as such.

This court stated in *Ill. C. R. R. v. Dillon,* 71 So. 809, in speaking of the duty of the Railroad Company to sound alarm at crossings where a street had been discontinued, but continued to be used by one hundred and fifty or two hundred persons going to and from their work every morning and afternoon: "While the Railroad company was under so statutory duty to sound alarm for this crossing, at the same time it is our opinion that its common-law duty required the engineer to give a signal of his approach to this much used crossing, especially is this true when the engineer knew that he was approaching this crossing at a rapid rate of speed

with a backing engine at the hour when between one hundred and fifty and two hundred people crossed it.''

In the case of *Y. & M. V. R. R. Co.* v. *Williams*, 74 So. 835, this court states: ''The injury occurred to Mr. Williams at what we term this 'north crossing.' This crossing was not considered a public crossing in the statutory sense that the railroad was required by law to give certain warnings, such as sounding the whistle or ringing the bell, upon approaching it, but it was a private or plantation crossing, which was frequently and habitually used by the public for several reasons, among which was the fact that the south public crossing over the railroad track just north of the depot was frequently and habitually blocked by trains standing on the tracks at that point, which made it necessary for persons desiring to cross the track to travel the east side plantation road north to the north crossing and there cross over to the west in order to get into the public road again on the west side.

This record presents quite a different case here. The train was approaching an abandoned road that is very infrequently used. There was no duty imposed upon it to sound an alarm and its knowledge of the infrequency of the use of the crossing relieved it of the duty of sounding an alarm. It could not see plaintiff as he approached the track. It was guilty of no negligence whatever, and the peremptory instruction asked should have been given.

It was the duty of the plaintiff before driving up to the defendant's railroad track to stop, look, or listen for an approaching train. It is possible that under certain conditions the exercise of reasonable care might not require a person to stop, look, or listen for an approaching train before going upon a railroad track. The duty in each instance, as a matter of law, must be determined from the circumstance surrounding the particular case. *Y. & M. V. R. Co.* v. *Williams*, supra. To same effect: *Memphis, etc., R. Co.* v. *Mitchell*, 52 Miss.

808; *Jobe* v. *Memphis & C. R. Co.,* 71 Miss. 734; *Y. & M. V. R. Co.* v. *Eakin,* 79 Miss. 735; *Hackney* v. *I. C. R. R. Co.* 33 So. 723; *Jackson* v. *Mobile, etc., R. Co.,* 89 Miss. 32; *I. C. R. R. Co.* v. *Sumrall,* 96 Miss. 860; *M. C. R. Co.* v. *Hanna,* 54 So. 74; *L. & N. R. Co.* v. *Williams,* 55 So. (Ala.) 218; *N. C. & St. L. R. Co.* v. *Vincent,* 66 So. (Ala.) 697; *So. R. Co.* v. *Irwin,* 68 So. (Ala.) 139; *L. & N. R. Co.* v. *Turner,* 68 So. (Ala.) 277.

The defendant requested the court to charge the jury that it was plaintiff's duty to have stopped, looked, or listened before going on the Railroad track, and his failure so to do was negligence. This the court refused to do. We submit that there is no liability on the defendant, and that the judgment should be reversed, and judgment entered here for defendant.

*Mize & Mize* and *J. C. Ross,* for appellee.

Appellant claims that the highway in the case and the crossing where appellee was hurt is shown by the evidence not to be a highway within the meaning of section 4045 of the Code of 1906, requiring a whistle to be blown or a bell to be rung, and that it is therefore not liable.

The words "any highway" seem to come up for construction in this state for the first time under this section in this case. We have no hesitancy in saying that the words "any highway" within the meaning of this section, mean a public highway, and we plant ourselves squarely on the proposition that if it is not a public highway, then the law does not require the ringing of the bell or blowing of the whistle before approaching this crossing.

In other words, we take the position that this section does not apply at a private highway or plantation crossing; that, in order for said section to apply, it must be a public highway. The weight of authority seems to hold this.

Now, the question is squarely before the court, what is a public highway? Counsel for appellant contend that, in order to be a public highway, it would have to be recognized by the county officials and worked as such by the county. We submit that, even if this position be correct, this case should be affirmed, because the evidence shows that this road had been worked by county officials, which testimony the jury evidently believed; but we contend, on the contrary, that it is not necessary for a highway to have county sanction to be a highway within the meaning of section 4045 of the Code of 1906.

An inspection of this record will show that this road is one of the very old, old roads of the piney woods of south Mississippi known as the "Old Wire Road," a very different sort of road indeed from the private plantation crossing of the delta or other large farming sections of the state.

Just as a reasonable doubt is a doubt for which a reason can be given, this and nothing more, so a public road means a road open to and travelled by the public—this and nothing more.

Counsel for appellant cites the case of *Railroad* v. *State,* 51 Miss. 137, which holds a highway to be a public road. What consolation they can get out of this decision, we are unable to see, because it was never contended on the trial below, and will not be contended here, but what the term "highway" used in said section means a public highway; and this decision does not give appellant any consolation as to what is a public highway.

The same thing is true of the case of *Talbot* v. *Richmond R. R.,* 31 Gratt. (Va.) 685, which holds that, if a highway is a way open to the public, then it would be tautology to say a "public highway." Instead of being authority for appellant, it is authority for appellee, because it expressly says: "Highway is a

passage, road, or street which every citizen has a right to use, and is, therefore, necessarily public.''

The instant record shows that not only every citizen had a right to use this road, but it had been used by citizens for forty years, and the railroad had recognized it as such by putting up signboards and also by grading it as a crossing.

Counsel for appellant also cite, *In re City of New York,* 31 N. E. 1043, which is a better authority for appellee than for appellant in which the court held: ''It is the right to travel upon it by all the world, and in the exercise of the right, which makes it a public highway; ''and the evidence discloses that all the world has had a right to travel on this road in question.

*I. C. R. R.* v. *Dillon,* 71 So. 809, cited by counsel for appellant, nowhere touches this case, because in that case there was an abandoned street, and streets are of but one kind; i. e., public streets. In speaking of a street, it is the common expression to say, ''on the public streets of a city,'' so, when a street is discontinued by a city, it is no longer a public highway, but a private way, and of course would not fall within the meaning of such a section as 4045 of the Code.

Counsel for appellant also cites the case of *Y. & M. V. R. R.* v. *Williams,* 74 So. 835, in which the court uses the following language: ''This crossing was not considered a public crossing in the statutory sense that the railroad was required by law to give certain warnings, such as sounding the whistle or ringing the bell upon approaching it but it was a private or plantation crossing, which was frequently or habitually used by the public for several reasons.''

In the *Williams case,* supra, the court was asked to instruct the jury by instruction 8 (R. Vol. 2, p. 325), that a public road was a road owned, worked or claimed by county authorities, and that a road through a plantation that was not worked or claimed by the county was not a public road. The lower court refused

to give said instruction and the refusal of this instruction was urged as error before the supreme court and the supreme court refused to reverse the case on the refusal by the lower court of said instruction, thereby refusing to commit itself to the doctrine that, in order for a road to be a public road, it had to be claimed or owned or worked by the county.

We think this decisive of our contention; that the supreme court, by its refusing to reverse for the refusal of said instruction evidently meant to hold that the determination of what is a public road is a question of fact, every case being dependent on its own particular facts, and that it was not necessary for a highway to have received county sanction to be a public road. Unless the court in said case did mean to hold this, it should have reversed the Williams case.

In said Williams case, the lower court also refused by instruction No. 9 (R. Vol. 2, p. 325), to tell the jury that the road in question in said Williams case was not a public road.

So we submit that the *Williams case,* supra, is not authority against appellee's contention herein. Elliott on Railroads (2 Ed.), sec. 1136, lays down the following: "Private or farm crossings, as distinguished from public crossings, are those crossings which are constructed not for the use of the public but for the benefit of a single individual or group of individuals; are all crossings in which the general public have no interest. They are usually constructed between different parcels of land which have been severed by the construction of the railroad, so as to afford the owner access from one parcel to the other."

At the middle of page 301, section 1150, 3 Elliott on Railroads, we find the following language: "If a railroad has recognized a private crossing as a public crossing, and the public use it as such, then it seems signals must be given."

Whatever might have been the character of the road in the instant case, the railroad had certainly recognized it as a public crossing, or it would never have put up sign boards at said crossing or graded said crossing.

In the case of *Lestrom* v. *Northern Pac.*, 55 N. W. 624, 20 L. R. A. 587, the following doctrine is laid down: "A road openly and notoriously used as a highway by the public and recognized as such by a railroad company, by permitting the public to cross its tracks, must be held to be a highway, so far as the duty of the railroad in respect to a crossing is concerned, whether or not the road has been legally laid out or used." *B. & Q. R. Co.* v. *Metcalf*, 63 N. W. 51, 28 L. R. A. 824; *Mo. Pac. Ry.* v. *Lee*, 70 Tex. 496; *R. R. Co.* v. *Dillon*, 24 Ill. App. 203, 42 So. 687; *Cleveland, C. C. & St. L. R. R. Co.* v. *Baker*, 106 Ill. App. 500; *C., B. & Q. R. R.* v. *Rich*, 65 Ill. App. 461; *Johnson* v. *Great Northern*, 75 N. W. 250, 7 N. D. 284; *Texarkana & St. L. R. R. Co.* v. *Frugia*, 95 S. W. 563; *Southern Ry.* v. *Combs*, 53 S. E. 508; *Russell* v. *Atchinson R. R.*, 71 Mo. 50, 44 Am. Rep. 377, 10 N. E. 539, 45 Ohio St. Rep. 11; 7 N. E. 801; 18 Ohio St. Rep. 399; 8 Atl. 43, 17 N. W. 406; 25 N. E. 378; 38 Pac. 957; 26 S. W. 760; *Skinner* v. *Town of Weathersford*, 78 Vt. 410; *Moore* v. *Maine Cent. R. R.*, 76 Atl. 871, 106 Me. 297.

From the foregoing authorities which, we submit, the court upon reading will find exactly in point, the court will see that from the nature of this highway, as shown by the record, it is a highway within the meaning of the statute.

Appellant also complains that the court refused to give an instruction that the appellee was under duty to have stopped, looked or listened before going upon the railroad track. In considering this complaint, we will call the court's attention to the fact that the court gave the following instruction requested by the defendant: "The court charges the jury for the defendant

railroad company that it was the duty of the plaintiff to have exercised some precaution for his own safety before going upon a railroad track of the defendant at the point where it is alleged he was injured; and if from the evidence the jury believed that he failed to exercise precaution for his own safety, then his act in going upon the railroad track without the exercise of this caution was negligence.''

The court will see that, by the giving of the instruction the court informed the jury what was the duty of the appellee before going upon the track. Appellant asked two instructions along the line that appellee had to stop, look, or listen, which were by the court refused; it does not say which instruction the refusal of which is complained of. Both tell the jury that it was appellee's duty to stop, look or listen.

We say, first, that these instructions were correctly refused because they do not announce a correct proposition of law; and, second the rule as to appellee's duty in this regard is given in the instruction obtained by the appellant above quoted and found at p. 14 of the record.

As to these instructions not announcing a correct proposition of law, we cite the case of *Crominarity* v. *L. & N. R. R.,* 86 Miss. p. 464. The record shows that appellee took reasonable precaution for his safety on approaching this crossing. As for contributory negligence, the jury was instructed at the instance of appellant as to their duty as to diminution of damages if they believed from the evidence appellee was guilty of contributory negligence.

It was clearly submitted to the jury under instructions for plaintiff whether or not appellant's failure to ring the bell or blow the whistle contributed to appellee's injury.

Upon the whole record, we submit that the appellant has had absolutely a fair and impartial trial of this case, the law was favorably expounded in its behalf

117 Miss.—9.

under the instructions it received and the verdict was mild; and we submit that this case should certainly be affirmed.

Smith, C. J., delivered the opinion of the court.

This is an appeal from a judgment against appellant for damages alleged to have been sustained by appellee because of being struck by one of appellant's trains. On the occasion in question appellee was traveling in an automobile upon a road which crosses appellant's track. When he arrived at the crossing he drove upon the track without either stopping, looking, or listening, or attempting in any other way, if such there be, to ascertain whether or not a train was approaching; his reasons therefor being that no train was due to be there then. He lost control of his car, and it stopped on the track, and before he could get out of the way he was struck and injured by one of the appellant's trains which approached the crossing without the whistle being blown or the bell being rung, as provided by section 4045, Code of 1906. The only evidence that the road had been dedicated to, or that the right to the use thereof had been acquired by the public, was that many years ago it was the route of a telegraph line, and was cut out and used for the purpose of erecting and keeping the line in repair, had for many years been used by the public generally, and that several years previous to the time of the accident it had been worked by the public road hands. At one time a signboard was maintained by appellant at the crossing, on which appeared the words, "Look out for the locomotive." This sign, however, was allowed to rot down and fall some years since, and had not been renewed. The grade at the crossing was slight, and vehicles could easily cross the track, but there were no special facilities provided for aiding them to do so. One of the witnesses stated that he had seen railroad employees working on the track at the crossing and putting in tiling.

One of the assignments of error brings into review an instruction by which the jury were charged, at the request of appellee, that if the road in question is a highway, appellant's servants were negligent in failing to ring the bell or blow the whistle as provided by section 4045, Code of 1906.

A highway is a road or way upon which all persons have the right to travel at pleasure. It is the right of all persons to travel upon a road, and not merely their traveling upon it, that makes it a public road or highway. This right may be acquired in various ways, one of which is by prescription; but in order for it to be so acquired, the road must be habitually used by the public in general for a period of ten years; and such user must be accompanied by evidence, other than mere travel thereon, of a claim by the public of the right so to do. The only evidence of such claim here is that the road was formerly worked by the public road hands of that vicinity, but when, for how long a period, and by what authority, does not appear, so that it is of no value. For aught that appears to the contrary, the travel over the road is by the sufferance or permission of the owners of the land over which it passes. *Warren County* v. *Mastronardi,* 76 Miss. 273, 24 So. 199; *Burnley* v. *Mullins,* 86 Miss. 441, 38 So. 635; *Wills* v. *Reed,* 86 Miss. 446, 38 So. 793. The instruction therefore should not have been given.

Another assignment of error is that the court erred in not granting appellant an instruction which, in effect, peremptorily charged the jury that appellee was guilty of gross negligence in going upon the track without stopping, looking, or listening. The instruction should have been given, for in order to have ascertained whether or not a train was approaching, it was absolutely necessary for appellant to have either looked or listened therefor, so that by doing neither he failed to exercise any care whatever for his own safety. Ordinarily, where the injured person's negligence con-

tributes to his injury, the characterization thereof by the court as "gross" would be error; for the degree of negligence is ordinarily a question for the jury, but where the injured pérson exercises no care whatever for his own safety, his negligence can very properly be characterized as gross.

*Reversed and remanded.*