YAZOO & M. V. R. Co. *v.* BEASLEY *et al.*

(Division A. Oct. 27, 1930. Suggestion of Error Overruled, November 24, 1930.)

[130 So. 499. No. 28806.]

May, Sanders, McLaurin & Byrd, of Jackson, and Chas. N. Burch, of Memphis, Tenn., for appellant.

Howie, Howie & Latham, of Jackson, for appellees.

Argued orally by **J. O. S. Sanders** and **A. J. McLaurin**, for appellant, and by **J. H. Howie** and **Virgil Howie**, for appellee.

**McGowen, J.**, delivered the opinion of the court.

The appellees, the father, mother, brothers, and sisters, and the father suing as administrator of Roy Beasley, deceased, by their declaration, charged that Roy Beasley was killed by the negligent operation of a train of the appellant railroad company where its railroad crosses South State street in the city of Jackson, Mississippi. The negligence, charged succinctly, stated was that the train of the appellant was backed over the South State street crossing in the nighttime at an unlawful rate of speed, without a flagman on the rear end of the train or on the ground preceding the train; that a flagman was not maintained at the crossing, as required by an ordinance of the city of Jackson; that no warning by bell or whistle was given of the approach of the train to the crossing; that the deceased, Roy Beasley, who was riding in an automobile, as a guest of one George Clark, the driver thereof, was struck by "being backed into by the train," alleged to be negligently operated; and that he sustained injuries thereby from which he died,

The appellant filed a plea of the general issue, and gave notice thereunder that testimony would be offered to show that the deceased sustained the injuries complained of as a proximate result of his own negligence and that of Clark, the driver of the automobile. The issue was submitted to a jury, who rendered a verdict in favor of the appellees for ten thousand dollars, and the judgment of the court was rendered accordingly. A motion for a new trial was entered, but overruled by the court.

The theory of the appellees was that the appellant's train was being backed eastward over the said crossing, which the ordinance of the city of Jackson required to be guarded by a watchman at all times; that the engine of the train was pushing a "cut of cars;" that no watchman was maintained there at that time, nor did a watchman get off of and walk across ahead of the train when crossing; that the train was moving in the city of Jackson, in the manner detailed, at the rate of fifteen or twenty miles an hour, and gave no warning either by bell or whistle when crossing.

George Clark, the driver of the automobile, testified that he drove his automobile toward this crossing at a distance of some six or seven hundred feet, at a rate of speed estimated to be about fifteen or twenty miles an hour in plain view of the crossing. He stated that he did not hear the whistle of the train nor the ringing of its bell, and that he did not see or hear the train. On cross-examination, when asked if he was paying attention, he answered, "Not particularly," that a car about one hundred or two hundred feet ahead of him preceded him over the track going south. The witness Farmer, coming north on South State street on the other side of the railroad, met the car which preceded Clark, saw the train at a distance of about two hundred feet, and had to stop for the train to pass. He was positive that the train was being pushed eastward by an engine at the rear of the train, that its headlight faced westward, and that he saw no flagman at the crossing. He, with many others who

were at the scene of the accident rendering aid to the occupants of the wrecked car, saw the headlight of the engine which was standing on the track near the tower just east of this street a few hundred feet, and that it was shining upon the scene. There is no contradiction of the fact that there was a street light near the railroad at this crossing. Nor is there contradiction that the railroad did not, in accordance with the requirements of the ordinance of the city of Jackson, maintain a watchman at this crossing.

The railroad, the appellant, sought to establish by its witnesses that the engine was drawing the train from the west to the east, and that the engine was headed east and in advance of the train; and with great particularity stated that a certain gondola car was struck on its side, the sill thereof being splintered thereby, and that there were glass and water on the car when it was delivered, a very short time after the accident, into the yards of the New Orleans & Great Northern Railroad; that this car left the Illinois Central yards in good order; that nothing happened save this accident to attract the attention of its employees; and that the car was next to the tender behind the engine, thereby according to appellant's evidence establishing the fact, as claimed by it, that the driver of the car recklessly drove it into the side of the train after the engine had crossed over, and at a time when the crossing was completely blocked by the ongoing train. It was shown that one Moore, a flagman of the appellant railroad, walked across the street, crossing in advance of the engine with his lantern, and after preceding the engine thus, he climbed back on it while the train was not moving at a greater rate of speed than five or six miles an hour. Photographs of the gondola car were introduced. There was much testimony to the effect that witnesses of the appellant railroad smelled the odor of whisky on Clark, the driver of the car, and Beasley, his companion, and likewise there was much evidence given to the contrary,

The accident occurred about midnight. The deceased, Beasley, was about nineteen years of age, in good health, and earning about twenty dollars a week at the time of the accident. Immediately after the accident, Beasley was carried to a hospital, but only lived six or seven hours afterwards, never regaining consciousness.

There was a contradiction of the testimony of the witness Farmer, in the form of a written statement given to a special agent of the appellant railroad, which appeared to have been erased in some particular, Farmer claiming that he did not make the statement written therein, and that the same showed erasures.

In connection with the giving of signals, there was only one witness who testified that they were not given, the driver, Clark; while, on the other hand, the railroad witnesses, Varnado, the engineer, Williams, the fireman, and Whitley, the engine foreman, testified positively that the whistle was blown and the bell was rung continuously until the train had passed over the crossing.

The court refused to grant a peremptory instruction requested by the appellant railroad company.

1. It is said that the court erred in refusing a peremptory instruction in this case, and counsel for the appellant in presenting the case contends most strongly for the railroad from the standpoint of its theory of the case, that the driver and his companion, or guest, drove the car at a rapid rate of speed into the side of a moving train, and made no effort to stop in obedience to the "stop, look, and listen" statute.

The real issues of this case are whether or not the train was being backed by the engine from the rear over this crossing without a watchman preceding it, or being on duty there, or whether the engine was in front of the train drawing it, and Clark drove into the side of an on-going train. The appellant relies most strongly for its contention upon the fact of the physical condition of the gondola car after the accident, in connection with its testimony that the train was being drawn by the engine,

and presents to us here the argument on this physical fact, which, no doubt, it presented to the jury in the court below. The jury rejected the appellant's theory of the accident, and by its verdict adopted the appellee's theory. The jury saw the sill of the car, and we are not in position to say that this physical fact overturned the evidence delivered by the witnesses for the appellee, and we must view the evidence of the appellees favorably to their contention in its strongest light. Had the court granted the peremptory instruction in this case, it would have been error. It was a question of fact for the jury.

2. It is insisted that the court erred in not charging the jury peremptorily that the warning signals were given, and eliminating that ground of negligence alleged in the declaration and supported only by the testimony of the driver of the car, Clark, it being urged that the negative evidence of George Clark, that he did not hear the train signals, is overcome by the positive testimony of the three railroad witnesses, or employees thereof, that the signals were given; and appellant relies upon the case of the Mobile & O. R. R. Co. et al. v. Johnson (Miss.), 126 So. 827, 828, in which case numerous witnesses testified positively to the ringing of the bell, as against the testimony of those that they did not hear the bell. There the court said, among other things: ''The question is, therefore, whether the case here is such that the court is required to apply the rule, sometimes generally stated thus: 'The testimony of witnesses that they did not hear the ringing of the bell on a locomotive as it approached a crossing, without proof that the witnesses listened for the bell, or that their attention was in any way directed to it, or that they probably must have heard the bell if it did ring, cannot prevail against the positive testimony of other credible witnesses that the bell did ring at the time in question.' '' After making this announcement, the court further said, after citing authorities: ''Upon all these authorities, we incline to the opinion that on this record we have a case within the rule

as thus generally stated." But the court did not announce, adopt, or apply this rule, but decided the case upon a different proposition.

We concede that there are authorities, many in number, that negative testimony of this character is not sufficient as against the positive testimony of witnesses that the event happened, to create an issuable fact for the jury. The rule adopted by this court is stated in the case of Columbus & G. R. R. Co. v. Lee, 149 Miss. 543, 115 So. 782, 784, as follows: "Testimony that a fact did not occur, given by a witness 'so situated that in the ordinary course of events he would have heard or seen the fact had it occurred,' is sufficient to warrant a jury in finding that the fact did not occur. 1 Wigmore on Evidence, section 664; 23 C. J. 40; Y. & M. V. R. R. Co. v. Lucken, 137 Miss. 572, 102 So. 393; Gulf & S. I. R. R. Co. v. Carlson, 137 Miss. 613, 102 So. 168; Grantham v. G. & S. I. R. R. Co., 138 Miss. 360, 103 So. 131; G., M. & N. R. R. Co. v. Hudson, 142 Miss. 542, 107 So. 369. Compare Lucas v. Goff, 33 Miss. 629."

The record shows that the witness was in a situation to hear and to see. Nothing is shown that would have prevented his hearing signals, if given, and we are urged to extend the rule or announce a change in it that is not fairly inferable therefrom. He was in a situation to hear, and says he believes he would have heard had the signals been given; to hold otherwise would require the witnesses who did not hear or see a thing, in delivering their testimony, to say, "I know," instead of, "I believe." Such is not a fair application of the rule announced by this court in many cases, and the fact that there was one witness, on the one hand, as against three employees whose duty it was to see that the event occurred, does not effect the situation.

3. It is next urged that the court erred in refusing to grant the instruction that both the deceased and Clark, the driver of the car, were guilty of gross negligence. Ordinarily, this instruction should not be given, because

it is on the weight of the evidence. But there are cases in which it is proper to give such an instruction. See Gulf & S. I. R. R. Co. v. Adkinson, 117 Miss. 118, 77 So. 954; and G., M. & N. R. R. Co. v. Seymour (Miss.), 105 So. 766. In the latter case, the facts are not given; in the former case, such facts as are given indicate that the railroad was under no duty with reference to a crossing nor a public highway.

In the instant case, the railroad was confessedly and consistently violating the ordinance of the city of Jackson, the largest city in the state. True it is that Clark said he knew that the appellant railroad had not always maintained a watchman at this city crossing, but does the fact that a witness knowing that a law has been once violated require him to act upon the presumption that it would continue to be violated? Clark also violated the law when approaching this crossing in not stopping, looking, and listening, as the statute requires; but the effort and effect of this instruction would have been to tell the jury that they must impute all the negligence of Clark, the driver, to Beasley, his companion and guest. There is nothing in this record to show what Beasley was doing or saying when approaching this crossing, or to show that he knew, or had any reason to believe, that the driver would violate the law. The fact is that the statement of Clark that Beasley did not warn him to stop is all that this record contains, and this does not show, from the time they came into South State street, whether Beasley was awake or asleep, or what he was doing or what his situation was. The facts of this case do not change the rule as announced by this court that: "A guest in, or an occupant of, a vehicle being driven by another over whom he has not control, is not chargeable with the negligence of the driver of the vehicle, but only with his own negligence in not remonstrating with the driver against the doing of a negligent act when the danger therefrom is, or should be, apparent to him." Railroad Co. v. Davis, 69 Miss. 444, 13 So. 693; Railroad Company v. McLeod, 78

Miss. 334, 29 So. 761, 52 L. R. A. 954, 84 Am. St. Rep. 630; Hines v. McCullers, 121 Miss. 666, 83 So. 734; Coccora v. Vicksburg Light & Traction Co., 126 Miss. 713, 89 So. 257; Y. & M. V. Railroad Co. v. Lucken, 137 Miss. 572, 102 So. 393.

The record in this case is barren of any information relative to the position, situation, and knowledge of the guest of the car, and the instruction would have imputed to him all the negligence of the driver, Clark, without regard to his position as a guest therein. It may or may not have been his duty, immediately before the accident occurred, to have warned the driver, but he could not control him. The duty devolved upon Clark, the driver, to stop, look, and listen, and to ascertain whether a train was approaching before driving on the track, if he knew that a watchman was not on duty; in other words, to do what was reasonably necessary situated as he was. At that point, Beasley had a right to rely upon the driver to perform his duty until it became apparent to him that he would not do so, and we do not know from this record what Beasley was doing after they drove in South State street, but before the accident occurred, or how he was engaged, or to what his attention was directed or not directed. The position of the railroad company on this question seems to be that the rule should be so extended as to make of a guest what is commonly called a "backseat driver," and that he must anticipate danger at all events whether it is apparent or not. Such is not the law.

4. It is insisted that the judgment of ten thousand dollars is excessive, and evinces passion and prejudice on the part of the jury. The deceased was nineteen years old, in good health, and earning eighty dollars a month at the time of his death. It is not shown what amount, if anything, was contributed by him to the appellees, nor is it shown that he had been emancipated. An element of damage for which recovery could certainly be had is the loss of companionship and society, and such future gratuities after he was twenty-one years of age as might

be bestowed upon his parents, brothers, and sisters. We cannot say in the light of the holding of this court in the cases of G. & S. I. R. R. Co. v. Boone, 120 Miss. 632, 82 So. 335, wherein twenty thousand dollars was allowed by this court, and the Gulf Refining Co. v. Miller, 153 Miss. 741, 121 So. 482, wherein eleven thousand dollars was not thought excessive, and where the principal element of damage was loss of companionship and society, that this judgment is excessive. In the Boone case, supra, the intestate was twenty-one years of age, drew the salary of a private soldier, and was contributing twenty dollars a month to his fourteen-year-old sister. He had two brothers, one sister, four half-sisters, and one half-brother. The intestate was an enlisted soldier, and it was estimated that the present worth of all his contributions for the period of his life expectancy was slightly less than four thousand dollars.

The verdict of the jury in this case was thirty thousand dollars. This court reduced the judgment to twenty thousand dollars. Deducting this four thousand dollars from the judgment, the loss of companionship to the plaintiffs in that case was sixteen thousand dollars. The earning capacity of Boone was far less than that of the intestate here. The life expectancy here was greater, and therefore the loss of companionship and society would be for a longer term of years. Taking into consideration the fact that the jury must have applied the comparative negligence statute in this case and imputed to the decedent the negligence of the driver, we cannot invade the province of the jury by saying that the verdict in this case evinces passion and prejudice on its part.

Affirmed.