## Sternberg Dredging Co. *et al. v.* Screws.

(Division A.   Mar. 30, 1936.   Suggestion of Error Overruled, May 11, 1936.)

[166 So. 754.   No. 32160.]

**Fielding L. Wright,** of Rolling Fork, and **Brunini &
Hirsch,** of Vicksburg, for appellants.

Clements & Clements, of Rolling Fork, for appellee.

Argued orally by **J. B. Brunini**, for appellant, and by **E. C. Clements** and **W. H. Clements**, for appellee.

**Cook, J.**, delivered the opinion of the court.

Appellee, Miss Lurline Screws, instituted this suit against the Sternberg Dredging Company and Burl Moody, for damages for personal injuries sustained by her in a collision between an automobile in which she was riding as a guest and a truck owned by the said dredging company and driven by the said Moody. She recovered a judgment for one thousand five hundred dol-

lars against both defendants, and from this judgment this appeal was prosecuted.

Appellee was traveling north on United States Highway 61 in an automobile driven by her sixteen year old brother. She was on the rear seat immediately behind the driver. Her sister and a young man were also on the rear seat, while her father, who owned the automobile, and another young man were on the front seat with the driver. Some distance south of Rolling Fork, in Sharkey county, there is a narrow bridge one hundred twenty-eight feet and two inches long, which has a clearance of fifteen feet and one or two inches between the guard rails. The road north and south of this bridge is straight for a long distance, and several feet wider than the bridge, and the floor of the bridge is covered with gravel. The collision occurred at a point near the north end of the bridge, and the automobile was knocked or plunged through the east railing or banister, and landed bottom up in the creek over which the bridge passed. The northern twenty-two feet of the east railing was torn down, while the truck scraped the west rail and broke it at a point sixteen feet from the north end of the bridge.

The testimony as to the movement and the exact location of the automobile and the truck immediately before and at the time of the collision is conflicting. Three of the occupants of the automobile testified that they were traveling north at a speed of thirty-five miles per hour; that when the automobile in which they were riding entered the south end of the bridge the truck was about one hundred feet north of the north end of the bridge and was traveling south at a speed of about forty miles per hour; that it continued onto the bridge without slackening its speed; that the right wheels of the truck were from one to two feet from the west guard rail; and that it so obstructed the road that it was impossible to avoid a collision, although the driver of the automobile pulled as close to the east rail as possible.

The driver of the truck testified that the truck entered

the bridge first; that when it entered the north end of the bridge the automobile in which appellant was riding was twenty-five or thirty feet south of the south end of the bridge and was approaching it at the rate of forty-five or fifty miles per hour; that the automobile entered and continued over the bridge without slackening its speed; that when he realized that the automobile was not slowing down he pulled the truck over against the west rail and stopped there; and that the automobile came on swinging, or swerving, in the loose gravel, and struck the truck at a point about where the front fender joins the running board. The only other occupant of the truck corroborated the driver of the truck in all respects, except as to the movement of the truck at the moment of the collision. As to this, the witness testified that the truck was almost, but not entirely, stopped at the time of the collision, and that it rolled a short distance after the collision.

Appellee testified that about five minutes before the collision, at a time when they were traveling at a speed of thirty-five miles an hour and there was no appearance of danger, she, being tired, removed her hat, rested her head on the back of the seat, and closed her eyes, and remained in that position until the collision occurred. She further testified that she was not familiar with the road; that she had no knowledge of the fact that they were approaching the bridge, or that any danger whatever confronted them.

The first point presented by appellants is that a peremptory instruction requested by them should have been granted. The argument upon this point is that the physical facts demonstrate that the appellants were guilty of no negligence, and that appellee's injuries were due solely to the negligence of the driver of the automobile in which she was riding. In support of this contention appellants rely upon the uncontradicted testimony that the body of the truck scraped the west railing or banister of the bridge, and the further fact that the automobile

passed the front end of the truck and struck it at a point near the connection of the front fender with the running board. The effect of this argument is that these facts demonstrate that the truck was on the extreme west side of the bridge, where it had a right to be, and that the automobile swerved out of its right of way and ran into the truck. We cannot agree with the contention that the physical facts are wholly inconsistent with the version of appellee's witnesses as to the location and movement of the two motor vehicles just before they entered the bridge and at the time of the collision. Accepting as true the testimony of appellee's witnesses as to the location and speed of the truck immediately before and at the time of the crash, as the jury has done, the physical facts appear to us to be easily reconcilable therewith. The testimony shows that there was a clearance between the guard rails of the bridge of only fifteen feet and one or two inches, and that the truck was seven feet and one and one-half inches wide, while the sedan was six feet and six inches wide. The combined width of the two motor vehicles was thirteen feet, seven and one-half inches, and therefore the clearance between them when passing at any point on the bridge could not exceed eighteen and one-half inches, if each of the motor vehicles was touching the guard rail on its respective side of the road. It is probably true that two motor vehicles being driven slowly and carefully can pass each other safely on a bridge covered with gravel when there is a possible clearance of only eighteen inches, but an attempt to do so at a high rate of speed would be manifestly dangerous and negligent.

In Universal Truck Loading Company v. Taylor (Miss.), 164 So. 3, it was held that the driver of a motor vehicle which reaches a bridge in advance of one approaching from the opposite direction has the right of way, but this rule does not have the effect of rendering one guilty of negligence who, in the exercise of due care and at a reasonable speed under the circumstances, drives

onto a bridge already occupied by a vehicle being operated in an apparently careful manner, if such bridge is sufficiently wide to permit the safe passage of two carefully driven vehicles; but to enter and traverse a bridge covered with loose gravel, on which there is a possible clearance between passing vehicles of only eighteen inches, at a high rate of speed, when the bridge is already occupied by a motor vehicle rapidly approaching from the opposite direction, is manifestly exceedingly dangerous and highly negligent. To drive a motor vehicle at a high rate of speed upon a gravel covered bridge close enough to the outer rail or banister to give full possible clearance for another vehicle driving at a high speed in the opposite direction is ordinarily beyond the ability of the most skillful and experienced driver, and from the evidence in this record the jury could have found that, at the moment of the collision, the body of the truck extended eastward beyond the center of the road so as to render a collision inevitable. The testimony of several witnesses for the appellee was to the effect that when the automobile in which she was riding entered the south end of the bridge the truck was about one hundred feet north of the bridge; that it entered the bridge at a rate of speed of about forty miles an hour with its western wheels and side from one to two feet from the western banister, thus taking up all or practically all possible clearance for the approaching automobile; and that it crashed into the automobile without slackening its speed. This testimony was contradicted by witnesses, but not necessarily by the physical facts, and we do not think the court below committed error in submitting this conflicting evidence to the jury.

Appellants next complain of instructions granted appellee to the effect that under the evidence she was not negligent, and could not be charged with any negligence of the driver of the automobile in which she was riding. In support of this assignment appellants rely on that line of cases in this state which hold that it is the duty

of an "occupant of an automobile" who "discovers danger or sees that the driver is taking a dangerous risk or needless exposure," to "caution and remonstrate with the driver and give warning of the danger which the driver has overlooked or has not observed," and that "a person riding in an automobile with another should not close his eyes to manifest danger, or fail to give warning of any danger that becomes apparent to him." Yazoo & M. V. R. Co. v. Lucken, 137 Miss. 572, 102 So. 393, 398; Weyen v. Weyen, 165 Miss. 257, 139 So. 608, 856; Illinois Cent. R. Co. v. McLeod, 78 Miss. 334, 29 So. 76, 52 L. R. A. 954, 84 Am. St. Rep. 630.

The rule announced in these and many other cases that it is the duty of a guest in an automobile to warn the driver of known and appreciated dangers is well established; but the expression in the Lucken Case, supra, that a guest "should not close his eyes to manifest danger," is far from saying that he should not under any circumstances close his eyes, and that he will be guilty of negligence if he does so. In the Lucken Case, supra, the court said that a guest in an automobile driven by another "is not under the same duty nor charged with the same degree of care as a person driving the automobile or other vehicle, and where the person driving the automobile or other vehicle is a safe and prudent and careful driver, the vigilance of the occupant of such automobile or other vehicle is considerably relaxed, and he may assume that the driver will take such caution as is reasonable and prudent under the circumstances." In the case of Yazoo & M. V. R. Co. v. Beasley, 158 Miss. 370, 130 So. 499, 501, where the proof did not show what the injured guest was doing at the time of and just before the accident, the court said: "Testimony that a fact did not occur, given by a witness 'so situated that in the ordinary course of events he would have heard or seen the fact had it occurred,' is sufficient to warrant a jury in finding that the fact did not occur."

In the case at bar there is nothing in the evidence to

show that the driver of the automobile was not a careful and prudent driver. The father of appellee, the owner of the automobile, and another were on the front seat with the driver, and these three persons were in much better position to observe the road and any danger therein than the appellee, who was riding on the back seat. The testimony is that, at a time when they were driving at a lawful and reasonable speed and there was no indication whatever of danger, the appellee rested her head on the back of the seat and closed her eyes, and that consequently she was not aware of the existence of the bridge or of the approach of the truck until after the collision. The care required of her was that required of an ordinarily prudent person under like circumstances, and under the circumstances confronting her she was not required to give instructions to the driver, or to keep a lookout for him. She was not required to anticipate danger at all events whether it was apparent or not, and under the circumstances she was guilty of no negligence in closing her eyes, or in failing to keep a lookout for unsuspected dangers.

Appellants next complain of that portion of an instruction which informed the jury that it should find for the plaintiff if it believed from the evidence "that the driver of the truck did not take the precautions that he should have taken in approaching the bridge." The criticism of this instruction is that it left the jury without any guidance from the court as to the precautions that the driver of the truck should have taken. The defect in this instruction was fully supplied by an instruction granted to the appellants which set out in detail the provisions of section 5571, Code 1930, which defines the duty of one operating an automobile on approaching or traversing a bridge, and this instruction further defined the words "under control" in approaching and traversing a bridge, as used in this statute, as meaning that the driver of such motor vehicle "must have the mechanism and power of the same under such control so

that it can be brought to a stop easily and readily if the need should arise, considering the condition of the bridge, its width and the traffic thereon." This instruction cured any defect in the instruction complained of.

Finally, the appellants complain of the form of the judgment entered. In an instruction granted the appellee, the jury was authorized to return a verdict against either or both of the appellants. They returned a general verdict for appellee and assessed her damages without naming therein either of the appellants. This was a general verdict in favor of appellee against both appellants, and the judgment was so entered. After the names of the two appellants in this judgment there were added the words "either of both." This is an awkward expression and was evidently intended to be "either or both;" but in any event these words are mere surplusage, and do not affect the validity of the judgment against the two appellants.

Affirmed.