WARREN COUNTY ET AL. *v.* ANDREW MASTRONARDI.

| | |
|---|---|
| 76 | 273 |
| e86 | 444 |
| 86 | 450 |

EASEMENTS.  *Right of way.  Prescription.*

A right of way over land is not ripened by prescription, unless the easement be claimed under color of right, and be so exercised as to render the claimant liable to an action of trespass in the absence of such right.

FROM the chancery court of Warren county.

HON. CLAUDE PINTARD, Chancellor.

Mastronardi, the appellee, was the complainant in the court below; the appellants were defendants there.  The facts are stated in the opinion of the court.

*Booth & Booth* and *George Anderson* for appellants.

An easement can be acquired in only one of three ways—by express grant, by implied grant, or by prescription, which always presupposes a grant to have existed.    We claim title in this case by prescription.

In the case of *Lanier* v. *Booth*, 50 Miss., 410, cited with approval in *Alcorn* v. *Sadler*, 71 Miss., 638, between which and the case at bar, by the way, there is a striking sameness of the facts, this court announces the principle that the same prescriptive user and possession which would confer title to land will also give title to a right of way, or an easement in or over the same.    Apply this simple doctrine to the undisputed facts of the case at bar, and appellants' title to the roadway in controversy would seem to be incontestable.

Mr. Washburn, in his book on easements (4th ed.), p. 199, uses this language: "The use of a way by the public for twenty years [ten years here] gives a prescriptive right of a public as well as a similar use does of a private way, and this right, when once established, continues until it is clearly and unmistakably abandoned."    Again, "When, however, the public assumes and exercises authority and control over the road, and the owner of the land makes no opposition, and twenty [ten] years elapse, conclusive presumption arises against him in that respect. A public highway is one established by public authority, and kept in order by the public, under the direction of the law, or else it is one used generally by the public for twenty years, and over which the public authorities have exercised control, for the reparation of which they are responsible."

In the case at bar the public have used this road continuously for thirty-one years, during which period the board of supervisors have worked and kept it in repair through their overseers, and for fifteen or twenty years prior to its obstruction by appellee, the present road overseer, had performed that duty, as will be seen from his evidence.    *Stewart* v. *Frink*, 94 N. C., 487 (55 A. R., 618); *Lanier* v. *Booth*, *supra*.

The reporter finds no brief· for appellee on file.

TERRAL, J., delivered the opinion of the court.

The Warrenton and Hawkinson Ferry public road, as originally laid out, is located on the dividing line between the land now owned by Mastronardi, and the land of the adjacent proprietor. In 1863, and prior thereto, the lands now owned by appellee belonged to Cameron, and were inclosed by a fence running along and next to said highway. Cameron's fence was destroyed, and the fence along said road and inclosing said land was not rebuilt until some time after August, 1894, when it was acquired by Mastronardi. Commencing with the year 1863, the old road, then used before the regular public highway, has been abandoned for seven or eight hundred yards of its course, and the traveling public have been accustomed, on account of the roughness of the old road, to pass over the Cameron tract of land. After Mastronardi bought the Cameron tract of land, he got permission of the board of supervisors to fence his own land so as to replace the public road on its original route. The board soon after rescinded the order granting appellee permission to run his fence across the road beaten out and used over his land, and the appellee declining to remove the fence which he had built inclosing his land, the overseer cut his fencing so as to open the road over appellee's land to public travel. Appellee replaced his fence, when the overseer cut it again, and, to prevent the third cutting of it, appellee replaced his fence and enjoined the overseer and the board of supervisors from interfering with it again. Upon hearing, the chancery court made the injunction perpetual, and the board of supervisors have appealed to this court.

In addition to the facts above stated, it was proved by some ten witnesses, on the part of the board of supervisors, all living in the neighborhood and conversant with the road, that the road through the land of Mastronardi is now pretty near the line it has been on for the last thirty years; that it has been used by

the public continually for that period, without objection on the part of the owner; that it has been, for more than ten years, worked by the overseer; that the old road was abandoned by the traveling public because of two or three hills and intervening hollows which "sloughed" out, and were hard to keep in good order; and that the road through appellee's land has been substantially on the same line for more than ten years.

Three witnesses on the part of appellee testified that the line of road upon appellee's land has been from the first continually shifting; that it has been worked in one or two places only, if it had been worked at all; and that it would cost no great deal to put the original road in repair.

We think the action of the chancery court is justified by the facts of the case.

As a title to land is gained by ten years' actual, adverse possession, the use of a right of way over land for a like period, exercised adversely and under color of right, would constitute a good title by prescription to such way. The use of a way over land, in order to ripen into a title by prescription, must be under color of right, and the privilege exercised must be such as to expose the party asserting such right of way to an action if he wrongfully exercised such right. Washburn on Easements (4th edition), 152, 153, 27, 28; *Lanier* v. *Booth*, 50 Miss., 410.

We do not regard the traveling public as asserting such privilege in this case. Surely they had no intention of inviting Cameron to sue them, and, indeed, it is difficult to see how he could have maintained an action against them collectively or distributively.

Certainly the board of supervisors had appointed an overseer for that link of the Warrenton and Hawkinson Ferry road, but there is nothing in the record to show that the board had any knowledge that the line of the original road had been departed from by the passage over Cameron's land until the filing of Mastronardi's petition in 1894. The whole record

shows that the public had a right of way in the road as origi-
nally laid out, more direct than that through Cameron's or
Mastronardi's land, which strongly tended to disprove any idea
of acquiring a right of way over the Mastronardi land, if indeed
anything less than an assertion of a claim by the board of
supervisors could constitute color of right.

*Affirmed.*