ARMSTRONG *et al. v.* ITAWAMBA COUNTY.

(In Banc.    Feb. 14, 1944.    Suggestion of Error Overruled March 13, 1944.)

[16 So. (2d) 752.    No. 35527.]

Geo. T. & Chas. S. Mitchell, of Tupelo, for appellants.

Brown & Jarvis and **A. T. Cleveland,** all of Fulton, and Marshall **T. Adams,** of Tupelo, for appellee.

808

Argued orally by **Chas. S. Mitchell**, for appellants, and by **W. E. Jarvis**, for appellee.

**McGehee, J.**, delivered the opinion of the court.

The two principal questions here presented for decision are: (1) whether or not a certain thoroughfare which traverses the lands of the appellants, and has been used by the traveling public generally for many years, has acquired the status of a public road so as to entitle the county to injunctive relief to compel the removal of obstructions therefrom, such as fences and gates placed across the same by the said landowners, when it does

not appear that such traveled route has ever been designated as a public road by an order of the board of supervisors, so far as may affirmatively appear from the minutes of the board, but where it is nevertheless clearly shown from the evidence that the roadway in question was used as a neighborhood or settlement road and worked by the local citizens of the community, when worked at all, for many years prior to 1924, and thereafter at public expense continuously until the year 1941, when such obstructions were placed therein, the solution of such question being dependent, in our opinion, upon the proof as to whether or not an easement for public road purposes has been acquired by prescription through adverse user for the period prescribed by law; (2) whether or not the description of the road set forth in the bill of complaint, and in the decree here appealed from, declaring the same to be a public road, is sufficient to identify the location thereof, the description being as follows: "That certain road in Section 11, Township 11, Range 7 East, in Itawamba County, Mississippi, as it now runs across the lands of the defendants, Ralph Armstrong and Elizabeth Armstrong, and said road more particularly described as follows, to-wit: Said road beginning at a point on the road known as the Cotton Gin Road, near what is known as Neighbor's Hill, in said district, county and state and extending in a northwesterly direction to a point on the public road known as the Patterson Road, at or near the residence of G. W. Jobe; said road in its length across the lands of Ralph Armstrong and Elizabeth Armstrong being approximately one-third of a mile, the entire road having a length of approximately one and three-fourths to two miles."

The correct decision of these questions is of vital importance both to the private citizen, whose land is to be lost by prescription, and to the traveling public, whose right to the use of the easement, without unreasonable interference, is being challenged. When it is considered that a good portion of our present state highway system

of paved roads and other public highways are located in counties where, in some instances, the public records have been destroyed by fire, and in others where the establishment of all the public roads does not affirmatively appear of record, due to a failure in earlier times to recognize the importance of making a complete record in many instances, and that the facts thereof are not within the memory of living witnesses, it will be readily seen that the public would be without remedy, after having maintained a highway for many years at public expense, to prevent such obstructions as are here complained of if it were requisite that the county should prove the existence of its public roads by orders on the minutes of the board of supervisors, reciting the establishment thereof, and disclosing a more definite description than the one now before us in each instance, or was required to prove aliunde by the testimony of the witnesses the taking of such formal action by the constituted authorities, as a condition precedent to relief; and, on the other hand, the property of the citizen and freeholder should not be lost to him without clear proof that knowledge has been brought to his attention that the user of the traveled route is under such circumstances as to be adverse to his right to later interfere, particularly so where there has been no conveyance or dedication of the right-of-way by deed or when there is no record evidence of its having been appropriated for public use by constitutional and statutory procedure.

In the instant case, we do not understand counsel for the appellants to make the specific contention that it was essential at all events for the minutes of the board of supervisors to affirmatively show the laying out and designation of the route in question as a public road in order for it to be such, so as to entitle the county to the relief sought herein; but that, on the other hand, it is expressly recognized in his excellent brief, that "a roadway, private or communal, may become a public road by the continued use of it for ten years," subject to the con-

dition "that when the state attempts to take the private property of the citizen in any manner than that expressed in the Constitution, its proof must be certain and definite that the use of such property has been adverse to the true owners of the same, and as of right," that is to say, under claim of the right to do so without let or hindrance. In other words, the precise contention here made is that in the absence of an order of the board of supervisors, or other record evidence showing that the roadway has been designated as a public road, the right of the county to treat the traveled route as such, and to prevent the landowner from placing fences and gates across the same, can never be acquired by mere user alone, however long continued, but that the public authorities must have exercised jurisdiction over it as a public road in such manner as to be seen by the owner of the freehold, such as superintending its upkeep at public expense and as of right, as distinguished from a mere user by the general public, and the working thereof at the instance of a member of the board of supervisors at the expense of the road fund of his district, for the statutory period of limitations here involved, where such acts are done only by permission of the landowner under an alleged agreement that he should have the right to later restore his fences and gates.

We would naturally assume that we have thus correctly stated the position of the appellants in seeking a reversal of the decree of the court below, even if their contention in this behalf was not clearly disclosed in the brief, for the reason that under the previous decisions of this court, many of which are relied upon for a reversal, no other ground for reversal could reasonably be assumed to be at all tenable under the facts of this case.

Whatever conflicts may appear in the testimony of more than a score of witnesses testifying are found not to pertain to the issue of whether or not the traveled route has been used by the public generally as a roadway for

a period of more than fifty years, but rather to the question of whether or not the continued use thereof since the year 1924 was under such circumstances as to amount to the requisite intention on the part of the constituted authorities to appropriate the same to public use for maintenance at public expense as a public road adversely to the right of the landowners to thereafter deal with it as a mere private easement or settlement road which could be fenced and closed with gates at their will and pleasure.

The proof discloses without substantial dispute that the supervisor of the district caused the road contractor therein, and such others as were employed to maintain the public roads in said district, to grade this road with the road machinery and equipment thereof, and to work and maintain the same for the use of the traveling public generally and at the expense of the road fund of the district, paid by county warrants issued thereon by allowance of the entire board of supervisors, from the year 1924 until 1941, without objection on the part of the landowners, who in our opinion were thereby put on notice that those having jurisdiction and authority over the public roads were asserting the right to so deal with this road as a part of the road system of the district unless it can be said that such undertaking was commenced in 1924, and continued thereafter, by the consent and express permission of the landowners, as alleged by appellants, and with the understanding that they could later withdraw such consent and again deal with the same as a neighborhood or settlement road as claimed, with the right to replace the fences and gates if they should desire; but which were not again placed across the road until 1941.

The proof relied upon to constitute the alleged agreement with the supervisor for a mere permissive use of the traveled route in the manner testified to from and after the year 1924, is the testimony of Mr. Myers, a former guardian of the appellee, Mrs. Elizabeth Armstrong, who

testified that about the year 1924, after his ward had reached her majority, he was approached with a petition for signature asking the supervisor of the district to take over the matter of working the road at public expense. That this petition was presented to him by Mr. Nichols, who had a contract to transport school children along the route, and that he finally signed it with the understanding and agreement hereinbefore mentioned, to the effect that the landowner could later enclose her land with fences and gates if desired, and that he relied upon Mr. Nichols to tell the supervisor about the understanding under which he had signed the petition and "thought that he would do so." However Nichols was unable to recall a conversation with the guardian about the matter, but denied having sought the permission of the landowner through her former guardian, Myers, under such an agreement, or otherwise, and testified that he thought everyone would be glad to have the road worked, and that he did not consult anyone in the matter except the supervisor. The former guardian then testified that after the supervisor had placed the machinery on the road, the witness told the supervisor about the condition under which he had signed the petition. But he did not testify that the supervisor agreed to the terms of the alleged agreement, but merely stated that he went on working the road. We are, therefore, unable to say that the chancellor was in error in not holding that the use by the general public, and the action of the supervisor and his successors in office in having said road graded and maintained at public expense, without objection from anyone interested as freeholders along the route, from that time until 1941, was pursuant to such an alleged agreement.

It is true that many of the throng of witnesses testifying on each side, were unable to state that in using the road in question they intended to claim the right to do so on the ground that it was thought by them to be a public road, some of them stating that they didn't know "just what it takes to make a public road." In other words,

they merely used it when desired, and without objection, while it was being maintained at public expense, and it was this user and the action of the public authorities in exercising such jurisdiction over the road for so many years, that gave it the status of a public road—and not what the individual traveler thought or intended. Moreover, it was often difficult in those days to distinguish the second class public roads from the first class settlement or community roads by mere observation or travel, because in some communities the enterprising local citizens took as much pride in the up-keep of their settlement roads to the church, school, and to market, as the public authorities did in some of the public roads, the principal difference being that in the first instance the work was done by the men of the community, and in the other at public expense. Nor was the traveling public required, when using a traveled route which was being maintained at public expense, to notify the local freeholders along the way that they were asserting the right to use it on the ground that they deemed it to be a public road.

In the early case of Tegarden v. McBean et al., 33 Miss. 283, the question was whether a road used by the public generally, ''for several years, but not for a sufficient length of time to create title by prescription, and without any adoption of it by the Board of County Police, as a public road, or jurisdiction exercised over it by that board, constitutes such a dedication as will vest the absolute right to it in the public, and divest all right out of the proprietor.'' The court in holding that the proprietor could not be compelled to remove obstructions therefrom, stated that, ''The road has never been adopted or sanctioned by the Board of Police as necessary for the public good. No overseer has been appointed to attend it, nor hands assigned to work upon it, as is required to be done in all public roads.'' Whereas, in the case at bar, the board of supervisors as a body sanctioned the working of the road here involved at public expense when it allowed

out of the district road fund compensation to the contractor, and others employed to assist in grading and maintaining this road with the road machinery and equipment of the supervisor's district wherein the same was located, in the same manner as was done for the other public roads therein.

In the case of Warren County v. Mastronardi, 76 Miss. 273, 24 So. 199, a traveled route which was recognized to be a public road had been used continuously for thirty years without objection on the part of the owner of the land, during which time the board of supervisors had worked and kept it in repair through their overseers, but the route of the original road had been departed from so as to pass over the land of the appellee, without any knowledge on the part of the board of supervisors, and this disproved any idea that the public authorities were undertaking to exercise jurisdiction over the route through the appellee's land as a public road.

In the case of Burnley v. Mullins, 86 Miss. 441, 38 So. 635, it was held that a neighborhood road, though used for more than ten years by all persons whose convenience was thereby promoted, did not become a public road where the same was never laid out or worked by public authority, although occasionally repaired by those using it. The court pointed out that the route in question had never been worked by road hands or under the supervision of a road overseer. Likewise, in the case of Wills v. Reed, 86 Miss. 446, 38 So. 793, 794, the court said: "The road was never under the supervision of the board of supervisors or county road authorities, was never worked by a road overseer, nor were the bridges or causeways on the same built at public expense."

In the case of Gulf & Ship Island R. Co. v. Adkinson, 117 Miss. 118, 77 So. 954, 955, the court, in discussing the question of whether a traveled route had become a public highway, said: "The only evidence of such claim here is that the road was formerly worked by the public road

hands of that vicinity, but when, for how long a period, and by what authority, does not appear, so that it is of no value.''

In the case of Board of Trustees v. Gotten, 119 Miss. 246, 80 So. 522, there was involved only the right to obstruct a private easement or way acquired by adverse user, and it was held that the owner of the servient estate may place a gate across the way if it does not unreasonably interfere with the rights of him who claims the easement, and the case is not therefore of much importance in the solution of the question now before us.

The foregoing authorities are cited and relied upon by the appellants in seeking a reversal in this case, but, as will appear from what we have stated in regard to the facts in those cases, they are not controlling in the case at bar.

In the case of Kinnare v. Gregory, 55 Miss. 612, the court said that, ''It is a grave mistake to suppose that a highway may not be established by the owner or owners of the freehold, which, when accepted by the public, is as complete as if the method appointed in the statute were pursued.'' Also, that, ''He may grant to certain persons or to the public the easement of a highway over his land; not that the grant is technically by deed, but he may do those acts which unequivocally manifest an intention that the community shall have and enjoy a highway on his private property. When the public accepts his offer there has been consummated that which is of equal import with a contract or grant, and there has been accomplished what is expressed by the term 'dedication'. The acceptance may be shown in two ways: first, by the formal act of the proper authority competent to speak and act for the public, or (second) it may be implied from circumstances, such as user, etc. People v. Jones, 6 Mich. 176; [Lessee of Village of] Fulton v. Mehrenfeld, 8 Ohio St. 440; Briel et al. v. City of Natchez, 48 Miss. 423, 436.'' Continued user when taken in connection with the working of the road for nearly

twenty years at public expense should be deemed to have been a sufficient acceptance. The landowners necessarily knew that in the absence of a permissive and conditional agreement, which they failed to establish, the grading up of a road was work of such character as to indicate a preparation for permanent use of the same for continued public travel without the right on their part to later withdraw the privilege, or interfere therewith by the obstructions herein complained of; that is to say, that the exercise of such authority by the county was adverse to the rights now asserted by the landowners.

And in the case of Rylee v. State, 106 Miss. 123, 63 So. 342, the court said: "It seems to be well settled that a highway may be created by prescription or by dedication, as well as by being laid out and established in accordance with statutory provisions. In his work on Roads and Streets (3d Ed.), vol. 1, par. 3, Judge Elliott says, referring to the establishment of a highway, that 'the mode of its creation does not of itself invariably determine its character, for this, in general, is determined by the rights which the public have in it.' In American & English Ency. of Law (2d Ed.), vol. 15, p. 494, we find the following regarding the mode of creation of highways: 'Provided the road is a highway, the mode in which it became such is immaterial, and consequently there may, in the absence of a statutory limitation, be an obstruction of a highway (acquired) by prescription or by dedication, provided the dedication has been accepted.' It has been decided that a highway may be established by immemorial usage."

In the case of Reed v. Northfield, 13 Pick. (Mass.), 94, 23 Am. Dec. 662, cited with approval in the Rylee case, supra, our court quoted therefrom the following: " 'But if an uninterrupted use of a highway and the support of it by the town for 40 years, which is now the longest term of prescription known to the law, would not establish it, it would be equivalent to declaring that there can be no highway proved in any mode but by the record of its

being laid out, which, in regard to many, and those the most important and ancient highways of the commonwealth, would be utterly impossible.' "

We are, therefore, of the opinion that both the law and the facts sustain the decree of the court below, to the effect that the route in question is a public road, even though the testimony is in conflict in material respects.

On the second proposition we are of the opinion that the foregoing description of the traveled route is sufficient to locate the same. It will be noted that the description designates the route to be "as it now runs across the lands of the defendants," and the proof shows without substantial conflict that it now runs along the same location where it has been traveled and used for more than fifty years for the entire distance of about one-third of a mile where it crosses the lands of the defendants, who are the appellants here. The description further states the point of beginning, the direction of its course, and its terminus at a point on another public road therein named, at or near a certain residence. If such a description should have been embodied by the defendants in a deed to the county we would have a case of "that is certain which may be made certain." It is doubtful if many of our public highways as now located were ever laid out and designated under descriptions by metes and bounds according to a survey, or that they are designated by any clearer description than that here involved. Section 6340, Code of 1930, provides that in laying out public roads the petition therefor shall set forth "the commencement and termination and general course thereof," and that the committee appointed by the board in that behalf "shall examine and view the contemplated route of the road, and, if they find the same practicable, they shall lay out and mark the road, . . . and report their proceedings, in writing, to the board at its next meeting." And section 6341, Code of 1930, provides that "if confirmed, the report shall be entered at large in the minutes of the board." It is well known to those familiar

with the administration of county affairs that the rights of way which have been thus acquired through the years are not based upon surveys and descriptions by metes and bounds as to the proposed location of such a highway. The description here could not be more definite and certain than to say that the road is located "as it now runs" across the lands of the defendants, since there has been no change in the location thus given within the memory of any of the witnesses in the case.

We are, therefore, of the opinion that the decree of the court below declaring the traveled route in question to be a public road and enjoining the appellants from maintaining fences, gates, or other obstructions across the same, should be affirmed.

Affirmed.

### DISSENTING OPINION.

**Smith, C. J.,** delivered a dissenting opinion.

The appellants a number of years ago fenced their land through which a road runs, and maintain gates therein where the road enters and leaves their land. The decree appealed from makes final an injunction obtained by the appellee directing the appellants to remove these gates and to refrain from replacing them. The bill of complaint alleges that the road has become a public road subject to the control of appellee by adverse user for more than ten years. The bill does not allege, and the evidence negatives the existence of an order on the minutes of the appellee's board of supervisors designating this strip of land as a public road. I think the description of the alleged road in the bill of complaint is not sufficiently definite to support the injunction sought, and for that reason the appellant's demurrer to the bill should have been sustained with leave to the appellee, if it so desired, to amend its bill so as to definitely describe the road.

On the merits two questions are presented: (1) May a strip of land be converted into a public road by adverse user thereof by a county as such, without an order on the minutes of the county's board of supervisors describing the land and designating it as a public road? Should that question be answered in the affirmative, then, (2) does the evidence here disclose an adverse user by the county of this strip of land as a public road continuously for more than ten years?

We are not here concerned with whether particular persons, or the public generally, have acquired an easement or right to cross the appellant's land, but only with the question of whether this land has become a public road subject to the supervision and control of the appellee in its corporate capacity. I shall leave out of view roads established by the highway department, and restrict what I have to say to public roads established by a county and subject to the supervision and control of its board of supervisors. In this state land does not become a public road subject to the control of a board of supervisors, imposing on a county the duties and liabilities that flow therefrom, unless it has been designated as a public road by the board of supervisors, Tegarden v. McBean & Kibbee, 33 Miss. 283, such boards can speak only through their minutes, consequently, this designation of land as a public road must appear, if at all, from an order therefor on the minutes of the board. After this order has been entered the county may acquire the right to use the land as a public road (1) by condemnation thereof as provided in the governing statutes, (2) by purchase or gift from the owner of the land, and (3) by adverse user of the land as a public road in the required manner continuously for more than ten years. For possession of land to be adverse it must be under the claim of right. This rule applies here, Warren County v. Mastronardi, 76 Miss. 273, 24 So. 199, and the only way in which such a claim by a county can be made to appear is by an order on the minutes of its board of

supervisors. In two cases only, Kinnare v. Gregory, 55 Miss. 612, Rylee v. State, 106 Miss. 123, 63 So. 342, has this court held that a county had acquired the right to use land as a public road by adverse user thereof, and in each of them an order appeared on the minutes of the board of supervisors designating the land as a public road. It is true that such an order may be inferred from long adverse use of the land as a public road, but this inference supplies proof and not allegation, and it can be resorted to only when the party invoking it has alleged in his pleading the existence of such an order; and, moreover, it is a rebuttable inference. The appellant's bill of complaint contains no allegation of the existence of such an order here, and that none such appears on the minutes of the board of supervisors appears from the evidence of the appellee's own witnesses.

If there be counties in the state where the minutes of their boards of supervisors have been destroyed no trouble can result therefrom in this connection, for where land is shown in such a county to have been occupied and used adversely by the county for the requisite length of time as a public road the inference arising therefrom that an order designating the land as a public road had been entered on the minutes of the board of supervisors could not be negatived, as there would be no evidence with which so to do.

Full jurisdiction over roads, ferries and bridges is given to the boards of supervisors by Section 170 of the Constitution, which means ex vi termini, that no road shall come under the jurisdiction of such a board and impose upon it the duty to maintain and repair it without its consent, which consent, of course, must be evidenced by an order on the board's minutes. This was so held 87 years ago by our predecessor, the High Court of Errors and Appeals, in Tegarden v. McBean & Kibbee, 33 Miss. 283, wherein, after referring to the Constitution and the statutes governing the establishment and maintenance of public roads, the court said: "The policy established by

these laws is, that the Board of Police (now board of supervisors) shall be charged with the duty of having all public roads kept in repair; and to that end, ample provisions are made for the enforcement of that duty. But in order to do this, the road must be established or adopted by that tribunal; otherwise, there is no compulsory power to have it kept in repair. . . . It is to be presumed that, if a road is necessary for the public convenience to be established as a public one, the Board of Police will perform their duty, and take the proper steps to constitute it a public road, under the sanctions of the law; *and if there be no such declaration by that body; the road, though open to public use, could be considered in law but a private road.*'' (Italics mine.) Such was the law of this state until departed from by the decision just rendered. Before closing its opinion the court there pointed out that ''no overseer has been appointed to attend to it, (the road there in question) nor hands assigned to work upon it, as is required to be done in all public roads.'' But that language was not intended to modify what had just been theretofore said and by itself alone could not have that effect. It had reference to the character of the user of the road, one of the elements for determining whether or not it had become a public road.

This brings me to the second question hereinbefore set forth. This alleged road is less than two miles in length. It has for many years been used with the knowledge and implied, if not expressed, consent of the owner of the land as a short cut for persons living in its vicinity to and from a church, cemetery, school and village. Other persons could have used it without objection from the landowner if they so desired. After the beginning of the use of this land as a private roadway the owner of that part of it now owned by the appellants fenced it, putting gates in the fence where the road entered and left the land. These gates continued until 1924 when they seem to have been discontinued and not to have been replaced until 1941. No order designating this land as a public road,

appointing an overseer therefor or directing that it be maintained at public expense appears on the minutes of the board of supervisors. In the 1920s a member of the board of supervisors in order to facilitate the use of the road by a bus for school children verbally directed that it be worked by those charged with the upkeep of public roads and thereafter it was worked about once a year by such persons, up to about three years before this suit was instituted. These facts, leaving out of view the absence of an order of the board of supervisors designating this land as a public road, are not such as to vest title to the land in the county by adverse possession as will appear from Warren County v. Mastronardi, 76 Miss. 273, 24 So. 199; Burnley v. Mullins, 86 Miss. 441, 38 So. 635; Wills v. Reed, 86 Miss. 446, 38 So. 793; Gulf & S. I. R. Co. v. Adkinson, 117 Miss. 118, 77 So. 954; University of Mississippi v. Gotten, 119 Miss. 246, 80 So. 522.

One of the tests for determining whether a road is a public or private one is the liability vel non of a county to keep it in repair. Tegarden v. McBean & Kibbee, supra, and I doubt if my associates would hold that this county would be liable for damages caused by this road not being in good condition.

The decree of the court below should be reversed and one rendered here for the appellant.