## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 97-CA-00188-SCT

*GEORGE COUNTY, MISSISSIPPI BY AND
THROUGH ITS BOARD OF SUPERVISORS; CLYDE
W. EUBANKS, SR., INDIVIDUALLY; R. WAYNE
CHRISTIAN, INDIVIDUALLY;*

*RALPH B. FAIRLEY, INDIVIDUALLY; LARRY A.
HAVARD, INDIVIDUALLY; AND NORMAN C.
HOWELL, INDIVIDUALLY*

*v.*

*J. B. DAVIS, STATE OF MISSISSIPPI AND OFFICE
OF THE MISSISSIPPI STATE AUDITOR*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/05/96 |
| TRIAL JUDGE: | HON. GLENN BARLOW |
| COURT FROM WHICH APPEALED: | GEORGE COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | GERALD ALAN DICKERSON |
| | KIMBERLY ANN CASTLE |
| ATTORNEYS FOR APPELLEES: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  LAWRENCE ARTHUR SCHEMMEL |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 9/10/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 10/1/98 |

**BEFORE SULLIVAN, P.J., McRAE AND SMITH, JJ.**

**SMITH, JUSTICE, FOR THE COURT:**

¶1. The case at bar comes to this Court concerning the question of whether certain roads in George County, Mississippi that were being maintained by the Board of Supervisors, were properly considered public. After careful analysis we find that there was sufficient evidence to support the Chancellor's findings and we therefore affirm.

## STATEMENT OF FACTS

¶2. In 1995, the Board had approved the paving of several smaller, secondary roads that lead to a small number of homes, or in some instances, only one home. While some of the paving was ongoing, a complaint alleging that the supervisors were paving private roads was made to the Department of Audit.

¶3. The Department of Audit conducted a formal investigation of the following roads:

1. James Miller Road

2. Wayne Ott Road

3. Claude Passeau Road

4. Woodrow Moody Road

5. Edith Moody Road

6. Irene Mosley Road

7. John Hickman Road

8. Old Turkey Ford Road

9. Hurtis Ray Rogers Road

10. Lena Cumbest Road

11. Old Caylor Taner Homestead Road

12. Brewer Road

13. Mergenshroer Drive

14. Danny's Drive

15. Eckhoff Road

16. Jim Reeves Road

17. Wilton Dickerson Road and Charles Welford Drive

18. Wilton Dickerson Road Extension

19. Inez Lane

20. Perine Road and Willie and Mary Banks Drive

21. Grover's Drive

22. Ray Fallon Drive

23. Burt Davis Road

24. Danny Davis Lane

25. J. B. Davis Road

26. McKinest Road

27. Ora Lee Road

28. James Mixon Road

¶4. The Audit Department found that these roads were private roads. In response to the Department's findings, the board members took Landowners' Affidavits, Prescriptive Road Affidavits, and photographs attesting to the fact that these roads had been maintained for a great number of years. Additionally, the Board filed a complaint on February 20, 1996, in George County Chancery Court requesting a temporary restraining order, permanent injunction, and declaratory judgment in an effort to have these twenty-eight (28) roads declared public. The chancellor filed an order on February 20, 1996, granting a temporary restraining order "from declaring or taking any action against the roads or Plaintiffs named in the Complaint as being private in nature until such time as the Court considers the request for Declaratory Judgement."

¶5. On March 19, 1996, the chancellor filed a scheduling order requiring the Board to notify the State Auditor (and thus the Attorney General) and the District Attorney for the Nineteenth Circuit Judicial District of Mississippi, of the opportunity to intervene and object to the roads being declared public. The Attorney General filed a waiver on May 10, 1996, choosing not to join in the action. The chancellor signed an Order on May 9, 1996, which was filed on July 1, 1996, scheduling a physical road inspection and providing for the court to receive testimony and evidence on July 10 and 11, respectively. The Order also provided that the Board's counsel could file a summary judgment motion and brief and/or brief supporting a Rule 57 declaratory judgment by June 30, 1996. The Board filed a motion and brief for summary judgment on June 28, 1996.

¶6. The trial court held a hearing on July 17-18, 1996, Honorable Glenn Barlow presiding, wherein testimony and evidence were presented by the Board of Supervisors and the State of Mississippi (by the Attorney General and Office of the State Auditor). At the beginning of the hearing, the Attorney General moved to withdraw the State's initial waiver. The court granted the motion without objection from the Board's counsel. At the hearing, two (2) roads, Billie Tilley Road and Mitchell Tilley Road, were added to the original complaint list of twenty-eight (28) roads in question. Additionally, on July 18, 1996, the court and the parties physically inspected each road in question.

¶7. On August 12, 1996, the chancellor filed a Ruling of the Court which categorized thirty roads into two groups. The first category are those roads that were petitioned in accordance with Miss. Code Ann. § 65-7-57 (1991). The second category are those roads that the Board alleges are public by virtue of prescription or dedication. However, following the Board's Motion for New Trial and Motion to Reconsider the Judgment, the chancellor entered a Supplemental Ruling on January 10, 1998. The final result is as follows:

Category One

1. Claude Passeau Road - public

2. Ray Fallon, Jr. Road - public

3. Wayne Ott Road - public

4. Shipman Church Road - public

5. Billie Tilley Road - public

6. Mitchell Tilley Road - public

7. Tanner Road - public

8. Inez Lane or Audrey Beech Road - public

9. Eckhoff Road - public

10. Sandra Brewer Road - public

11. Wilton Dickerson Rd (Charles Welford) private (public up to C Dickerson prop line, then private past that)

12. Danny Davis public

13. James Mixon Road - public

14. J.B. Davis Road - public

Category Two

15. Lena Cumbest Road - private

16. McKinest Road - private

17. Burt Davis Road - private (deemed public in supplemental ruling)

18. Evelyn & Rufus Fairly Rd (Ora Lee Rd) public

19. Banks Drive - private

20. Grover's Lane (Nathan Havens) private

21. Danny's Drive - private

22. Mergenschroer Drive - private

23. Jim Reeves Road - private

24. John Hickman Road - public

25. Woodrow Moody Road - private (deemed public in supplemental ruling)

26. Moffett Annex - public

27. Calvin Tucker - private

28. Irene Mosley Road - private

29. James Miller Road - private

30. Hurtis Ray Rogers Road - private

Supplemental Ruling

31. Turkey Fork Road - public (federal funds)

¶8. Aggrieved by the trial court's ruling, the Board of Supervisors appealed to this Court and raised the following issues:[(1)]

**I. WAS THE LOWER COURT BOUND BY ITS ORDERS AND SHOULD HAVE THE JUDGMENT BEEN ENTERED FOR APPELLANT AS THERE WAS NO RESPONSE FROM THE ATTORNEY GENERAL'S OFFICE OR THE STATE AUDITOR'S OFFICE, OPPOSITE COUNSEL, TO ITS REQUEST FOR RELIEF ON MOTION FOR SUMMARY JUDGMENT TOGETHER WITH SUPPORTING BRIEF?**

**II. DOES ARTICLE 6, SECTION 170 OF THE MISSISSIPPI CONSTITUTION OF 1890 AND SECTION 19-3-41[(2)], MISSISSIPPI CODE OF 1972, GRANT UNTO THE BOARD OF SUPERVISORS EXCLUSIVE JURISDICTION, OVER COUNTY ROADS, BRIDGES AND FERRIES, SUBJECT ONLY TO APPEAL AS PROVIDED BY LAW?**

**III. WAS THE COURT ARBITRARY AND CAPRICIOUS IN ACCEPTING OR REJECTING CERTAIN ROADS AS BEING PUBLIC OR PRIVATE BY PRESCRIPTION?**

## LEGAL ANALYSIS

**I. WAS THE LOWER COURT BOUND BY ITS ORDERS AND SHOULD HAVE THE JUDGMENT BEEN ENTERED FOR APPELLANT AS THERE WAS NO RESPONSE FROM THE ATTORNEY GENERAL'S OFFICE OR THE STATE AUDITOR'S OFFICE, OPPOSITE COUNSEL, TO ITS REQUEST FOR RELIEF ON MOTION FOR SUMMARY JUDGMENT TOGETHER WITH SUPPORTING BRIEF?**

¶9. The Board of Supervisors alleges that the chancellor should have granted its Motion for Summary Judgment since the State of Mississippi filed a Waiver of Interest on May 10, 1996. The Board further contends that the chancellor erred in allowing the Attorney General's office to participate in the trial since the chancellor's Order regarding the Board's Motion to Place on Trial Docket, for Inspection and Final Hearing dated July 1, 1996, indicated that the "State Auditor, nor the Attorney General or the District Attorney intervened in this action after notification and that the parties should be as set forth in the original complaint . . .."

## State's Participation

¶10. The Board argues that the chancellor was bound by this Order and erred in allowing the Attorney General's Office to participate in the trial. The Board further maintains that the court "had an ex parte communication with the State of Mississippi, in which it seemingly requested their presence at trial."

¶11. On the other hand, the State maintains that when the Board's counsel first discussed the filing of the complaint with the State, the Deputy Attorney General was not informed by the Board's counsel that the State Auditor had been involved in the case investigating improprieties of paving private driveways and roads in George County. The State also maintains that once this was learned, the Deputy Attorney General contacted the Board's counsel prior to trial and informed him that the State's waiver would be withdrawn at trial. Moreover, the record reflects that the State did in fact move to withdraw its initial waiver at the beginning of trial and that the chancellor granted the State's motion to withdraw its waiver **without objection by the Board's counsel.**

¶12. Even though there are numerous allegations propounded in both briefs alleging improprieties on both sides, this Court is bound to make its decision based on what is actually contained in the record. The record shows that the Attorney General's Office filed a Waiver of Interest in the proceedings, on May 10, 1996. However, the record also shows that Jim Steele, Assistant Attorney General notified the Board's counsel on July 16, 1996 of their intent to be present at trial representing the State of Mississippi and the State Auditor's Department. Additionally, the record reveals that the Attorney General's Office appeared at trial and promptly made a Motion to Withdraw their Waiver of Interest. The chancellor granted the State's motion and allowed their participation in the proceedings. Moreover, the record indicates that the Board's counsel did not object to the State's Motion to Withdraw their Waiver of Interest. Since the Board's counsel did not object to the State's participation at trial, we hold that the Board implicitly consented to the State's participation. Accordingly, we hold that this issue is procedurally barred and not properly before this Court.

## Summary Judgment

¶13. The Board also alleges that the chancellor erred in not granting their request for Summary Judgment since there was no response from any aggrieved party, and the pleadings and the motion provided sufficient evidence upon which to enter a summary judgment. Rule 56 of the Miss. R. Civ. Pro. provides that the trial judge may grant summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on the file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Accordingly, the trial judge is not required to grant a summary judgment based solely on the fact that the opposing party did not respond. The determining factor involved in granting a summary judgment is whether or not there is a "genuine issue as to any material fact." Since the trial judge proceeded to trial, it is obvious that he concluded that there were issues of material fact in the case at bar.

¶14. The Uniform Chancery Court Rules do not contain a rule which specifically addresses the duties of the movant as do the Uniform Circuit and County Court Rules. For example, URCCC 2.04 states:

> It is the duty of the movant, when a motion or other pleading is filed, including motions for a

new trial, to pursue said motion to hearing and decision by the court. Failure to pursue a pretrial motion to hearing and decision before trial is deemed an abandonment of that motion; however, said motion may be heard after the commencement of trial in the discretion of the court.

¶15. Even though the movant's duties are not expressly stated in the Uniform Chancery Court Rules, there is no reason to deviate from this well established principle in Chancery Court proceedings. Therefore, it was the Board's duty to pursue a ruling on the Motion for Summary Judgment. The record reveals that the Board's counsel did not pursue the ruling of the Motion for Summary Judgment prior to trial. Consequently, when the Board failed to pursue the motion, and the case went to trial, the Board implicitly abandoned said motion. Accordingly, there is no merit to the Board's contention that the chancellor erred by not entering a ruling on the Motion for Summary Judgment.

### II. DOES ARTICLE 6, SECTION 170 OF THE MISSISSIPPI CONSTITUTION OF 1890 AND SECTION 19-3-41, MISSISSIPPI CODE OF 1972, GRANT UNTO THE BOARD OF SUPERVISORS EXCLUSIVE JURISDICTION, OVER COUNTY ROADS, BRIDGES AND FERRIES, SUBJECT ONLY TO APPEAL AS PROVIDED BY LAW?

¶16. In the appellant's brief, the Board simply states that the Mississippi Constitution, statute and supporting case law affords the county's Board of Supervisors broad authority and jurisdiction over its public, not private, roads. Its cites the following in support of this statement: Article 6, Section 170 of the Mississippi Constitution of 1890, Miss. Code Ann. § 19-3-41, Miss. Code Ann. § 65-7-95, *Board of Supervisors Tishomingo County v. Blissitt*, 220 Miss. 645, 27 So. 2d 678 (1946), and *Strahan v. Attala County*, 91 Miss. 529, 44 So. 857 (1907).

¶17. The chancellor's Ruling of the Court dated August 7, 1996, recognizes the legal authorities cited by the appellants. Furthermore, the chancellor acknowledges the Board's authority with respect to public roads and specifically states,

> With this backdrop, it is the opinion of this Judge that the foregoing authorities give absolute discretion to the Board of Supervisors when considering a petition and many other matters dealing with roads, but particularly where a petition is filed and upon those petitions being filed and duly acted upon by the Board of Supervisors, it is their discretion and judgment as to whether or not the road is solely public. Therefore, when the petitions were presented and **same was acted upon by the Board and recorded in the minutes from which the Board speaks**, those roads, in the judgment of this Court, became public.

(emphasis added).

¶18. Since the appellant states no specific error in relation to this issue and the chancellor expressly acknowledged the Board's authority in this area, there is nothing for this Court to address under this issue.

### III. WAS THE COURT ARBITRARY AND CAPRICIOUS IN ACCEPTING OR REJECTING CERTAIN ROADS AS BEING PUBLIC OR PRIVATE BY PRESCRIPTION?

**Standard of Review**

¶19. Judicial review of the Board of Supervisor's decision concerning whether the public interest or convenience requires the establishment of a new road is limited to whether there was any reasonable basis for the board's action. **Board of Supervisors Tishomingo County v. Blissitt**, 200 Miss. 645, 657, 27 So. 2d 678, 680-81 (1946). Accordingly, the chancellor's review was limited to a determination of whether the Board had any reasonable basis for acting.

¶20. In reviewing the chancellor's actions, this Court must determine whether the chancellor abused his discretion in determining the public or private status of the roads in question. "Absent an abuse of discretion, this Court will uphold the decision of the chancellor. This Court will not disturb the factual findings of the chancellor unless said factual findings are manifestly wrong or clearly erroneous." **Benedict v. City of Hattiesburg**, 693 So. 2d 377, 379 (Miss. 1997) (*citing* **McAdory v. McAdory**, 608 So. 2d 695, 699 (Miss. 1992)).

### Legal Analysis

¶21. This Court has stated that a public road may be created by prescription, dedication, or pursuant to statutory provisions. **Coleman v. Shipp**, 223 Miss 516, 530, 78 So. 2d 778, 784 (1955) (*citing* **Armstrong v. Itawamba County**, 195 Miss. 802, 16 So. 2d 752, 757-58 (1944)); Miss. Code Ann. § 65-7-57 (1991). The chancellor's ruling separated the roads in question into two categories. The first category included those roads that were determined to be public by virtue of the fact that they were petition roads and established as contemplated by § 65-7-57. The second category included those roads that were alleged to have been established by dedication or prescription. The final results of the chancellor's ruling and supplemental ruling have been previously stated in the Statement of Facts.

¶22. The Board maintains that in the late 1980's, the George County Board of Supervisors was advised by then State Auditor Ray Mabus, and then District Attorney Mike Moore that in those instances where a road had not been dedicated or petitioned, the county could gain the road by prescription or affidavit. Specifically, "[t]he County was told that after years of the County maintaining a road and there wasn't any record of it being dedicated or petitioned then the supervisor could gain the road by the affidavit procedure [whereby] the supervisors gets [sic] affidavits from the landowners and surrounding community citizens who have knowledge of the road and knows that the road has existed and that the county has maintained it for at least ten (10) years." Therefore, the Board alleges that "this resolution set a custom as to which counties declared roads public or private." Furthermore, the Board maintains that "[a]t times, this was the only criteria the supervisors used in their determination."

¶23. We reject the Board's argument concerning this "resolution." Even though this may have been the understanding of incoming supervisors, there is no proof in the record that the Board was actually advised of the affidavit procedure. In its Motion for New Trial, the Board relies upon an Attorney General's Opinion dated April 24, 1984. However, this Opinion is void of any guidance concerning the affidavit procedure. Conversely, the Opinion reiterates the established case law in Mississippi; in order for a road to become public by prescription the road must be habitually used by the public in general for a period of ten years, **and** such use must be accompanied by a claim by the public of the right so to do.

¶24. In order for the roads to be public by prescription, all the required elements must be present.

This Court has previously identified the required elements.

> The county claims the road public by prescription and, therefore, has the burden of proving, as does an individual claimant, that the use is:
>
> (1) open, notorious and visible;
>
> (2) hostile;
>
> (3) under claim of ownership;
>
> (4) exclusive;
>
> (5) peaceful; and
>
> (6) continuous and uninterrupted for ten years.

*Myers v. Blair*, 611 So. 2d 969, 971 (Miss. 1992) (citations omitted). Furthermore, this Court has consistently held that the Board of Supervisors can only act through its minutes. *Martin v. Newell*, 198 Miss. 809, 23 So. 2d 796 (1945); *Noxubee County v. Long*, 141 iss. 72, 82, 106 So. 83, 86 (1925); *Smith v. Board of Supervisors*, 124 Miss 36, 86 So. 707 (1920).

> It is to be presumed that, if a road of Tallachatchie County, is necessary for the public convenience to be established as a public one, the Board of Police will perform their duty, and take the proper steps to constitute it a public road, under the sanctions of the law; and if there be no such declaration by that body, the road, **though open to public use**, could be considered in law but a private road.

*Armstrong v. Itawamba County*, 195 Miss. 802, 822, 16 So. 2d 752, 755 (1944) (Smith, J., dissenting) (emphasis added). Similarly, in the case at bar, it is error for the Board to rely solely on the fact that it has maintained the roads for more than ten (10) years. If the roads do not have all the required elements of prescription and have not been properly acted upon by the Board of Supervisors, under established law in this state, they can only be considered private roads. The affidavits submitted in support of the Board's contention that the roads possessed the required claim of public use and necessity are not exclusive proof, but are only one factor to be taken into consideration by the chancellor in making his decision.

¶25. In the case at bar, the chancellor's decision was based upon numerous factors such as the Board minutes, the State Auditor reports, testimony from Board members, the public and the State Auditors, as well as on-site inspection of each of the roads in question. Therefore, in accordance with this Court's limited standard of review in regards to the chancellor's decision and further recognizing the time and effort exhibited by the chancellor in this case, the Board must show that the chancellor manifestly erred in his decision.

¶26. Obviously, the Board does not allege any error in regards to those roads grouped into Category One, since these roads were deemed to be properly petitioned as public roads. However, the Board argues that the chancellor's ruling was arbitrary and capricious and specifically that he erred in determining that the following Category Two roads were private rather than public:[3]

1. Banks Drive

2. Hurtis Ray Rogers Road

3. Irene Mosley Road

4. James Miller Road

5. Lena Cumbest Road

6. Mergenschroer Drive

7. Danny's Drive

8. McKinest Road

¶27. The chancellor's Supplemental Ruling declared Moody Road as public because, even though it presently serves only one residence, since it serviced several households in the past and had not been abandoned by Board action. Accordingly, the Board contends that Banks Road, Hurtis Ray Rogers Road, Irene Mosley Road, James Miller Road, Lena Cumbest Road, and Mergenschroer Drive should have also been declared to be public based upon the same rationale.

¶28. 1. Banks Road: The Board contends that Banks Road should have also been declared public since it serves two residences, the house of Willie and Mary Banks and the mobile home of Mr. Joe T. Perine. However, conversely, the State Auditor's report indicates that the Banks are the only individuals using the road since Mr. Perine's main driveway exits off Perine Road to the north of the Banks' driveway. Furthermore, the chancellor's initial ruling found that Mr. Perine has access by another driveway. This Court finds that the Board has failed to demonstrate manifest error in regards to the chancellor's decision concerning Banks Drive. Accordingly, the chancellor's decision is affirmed.

¶29. 2. Hurtis Ray Rogers Road: The chancellor's Supplemental Ruling declared Moody Road as public even though it presently serves only one residence, it serviced several households in the past and had not been abandoned by Board action. Accordingly, the Board contends that the Hurtis Ray Rogers Road should have been declared public since it historically served one house and one mobile home and has never been abandoned by Board action.

¶30. Review of the record indicates that although this road apparently crosses another property owner's (J.C. Rogers, Jr.) land, it ends at one residence (Hurtis Ray Rogers). Furthermore, there was testimony that the other property owner's land bordered Highway #63, which would provide the second property owner with other access to the main road. Accordingly, the Board has not shown the chancellor's decision that there was no public character to this road was manifest error. Therefore, we affirm the chancellor's decision.

¶31. 3. Irene Mosley Road: Also based upon the chancellor's finding regarding Moody Road, the Board contends that Irene Mosley Road should be declared public since it serves two residences, one house and one trailer. In determining this road to be private in nature, the chancellor stated that this road leads only to Irene Mosley's property and the evidence and viewing of this property failed to

indicate a public use. Although there was testimony that some of Ms. Mosley's children had a trailer behind the Mosley house, there was also testimony that the road ended at the Mosley house. Therefore, the chancellor's ruling that this road only serves the one house and is thus private in nature, was not manifest error. Accordingly, the chancellor's decision is affirmed.

¶32. 4. James Miller Road: The Board's contention that the James Miller Road should be declared as public is also based upon the chancellor's finding regarding Moody road. Specifically, the Board maintains that the James Miller Road currently serves three residences, Mr. Miller, his son and his daughter's families. Testimony revealed that James Miller and his daughter are the only ones living at the end of this road; James Miller lives at the end of the road and Miller's daughter, to whom Miller gave some property and for whom Miller built a house, lives past Miller's house.

¶33. The chancellor's Ruling indicates that "[t]his road was a petitioned road, but the petition was not shown in the minutes and no action was taken by the Board of Supervisors." Furthermore, the chancellor found "[n]o public character or circumstances indicating the use of this road was necessitated as a result of the convenience and necessity to the public." The Board has not propounded sufficient evidence for this Court to hold that the chancellor abused his discretion and manifestly erred in finding this road to be a private road.

¶34. 5. Lena Cumbest Road: The Board alleges that the Lena Cumbest Road presently serves two households, one trailer and one mobile home. The Board further alleges that Lena Cumbest Road presently serves as a school bus turnaround. However, the chancellor's Ruling indicates that "[t]he [Board] minutes reflect that on April 25, 1984, this road was rejected for the second time." Testimony revealed that Johnny Keel, Ms. Cumbest's ex-husband has a trailer behind Ms. Cumbest's house, but that the road stopped at Ms. Cumbest's trailer. Furthermore, Ben Norris, investigator for the State Auditor, testified that he personally observed the school bus dropping a child off in the rain at the main road, without traveling down Lena Cumbest Road. Therefore, the Board has failed to show that the chancellor's decision was manifest error. Accordingly, the chancellor's decision is affirmed.

¶35. 6. Mergenschroer Drive: The Board maintains that Mergenschroer Drive crosses other separate landowners' property and said landowners use the road for ingress and egress. Therefore, the Board contends that the chancellor should have declared this road as a public road based upon the Moody Road rationale. Furthermore, the Board highlights the court's finding "that Danny Davis Road was public . . . because it gave access to adjoining Sixteen[th] Section Land, in which the Forestry Service had access unto." They allege that the court should have declared Mergenschroer Drive public based upon the fact that "it also is the only access to a tract of Sixteen[th] Section Land, which is cruised by various timber companies."

¶36. However, the appellees point out that the court had the benefit of the road's history, photographs, and land maps, and nevertheless found no public use, necessity, or convenience for this road. Moreover, there was testimony that this road dead-ends at Larry Mergenschroer's residence, thereby serving one residence.

¶37. The chancellor's Ruling indicates that even though it has been maintained by the Board for a substantial number of years, this in and of itself, does not make it a public road in the absence of any evidence of public use. The Board has failed to show that the chancellor abused his discretion in

ruling Mergenschroer Drive to be a private road. Accordingly, the chancellor's decision was not manifest error and is affirmed.

¶38. Furthermore, the Board alleges that the chancellor's initial ruling found Eckhoff Road to be public because a school bus had formerly traveled the road[4] for the prescriptive number of years and there was board action approving the paving of same. Accordingly, based upon this same rationale, the Board argues that the chancellor erred in ruling Danny's Drive, Lena Cumbest Road[5] and McKinest Road were private.

¶39. 7. Danny's Drive: The Board argues that the chancellor erred in not finding Danny's Drive public based upon the chancellor's finding regarding Eckhoff Road. Additionally, the Board maintains that Danny's Drive presently serves as a school bus turnaround.

¶40. Review of the record indicates that even though the chancellor's initial ruling indicated that Eckhoff Road was formerly traveled by the school bus for the prescriptive period, this road was included in the Category One roads, which indicates that the chancellor's finding was based on the fact that Eckhoff Road was a properly petitioned road[6] and not based upon prescription.

¶41. Furthermore, the chancellor's Ruling found there was only one residence at the end of this road, there was no public benefit from the use of this road, and it did not meet the requirements of § 19-3-42. The Board has failed to demonstrate that the chancellor manifestly erred in his determination that Danny's Drive is private. Accordingly, the chancellor's decision is affirmed.

¶42. 8. McKinest Road: The Board maintains that although a school bus no longer travels McKinest Road, it traveled it previously for the prescriptive number of years. Therefore, the Board alleges McKinest Road should have been declared a public road and properly maintained by the Board. However, there was no testimony indicating that the school bus traveled this road or had in the past. Furthermore, Ben Norris testified that this road ends at a trailer, which is the only residence on the road. Accordingly, the chancellor's finding that "there is no evidence to indicate that the public has an interest or that this road has served the necessity and convenience of the public in the past" was not manifest error and is affirmed.

## CONCLUSION

¶43. The Board of Supervisors alleges that the chancellor erred by not granting its Motion for Summary Judgment since the State of Mississippi filed a Waiver of Interest and did not respond to its motion. However, the trial judge is not required to grant a summary judgment based solely on the fact that the opposing party did not respond.

¶44. The Board also alleges that the chancellor erred by allowing the Attorney General's office to participate in the trial after filing a Waiver of Interest. The record reveals that even though the Attorney General's office filed a Waiver on May 10, 1996, they later notified the Board's counsel on July 16, 1996 of their intent to be present at trial. Additionally, the record reveals that the Attorney General's office appeared at trial and promptly made a Motion to Withdraw its Waiver of Interest, which the chancellor granted without objection from the Board's counsel.

¶45. The Board further alleges that the chancellor's decision was arbitrary and capricious in regards

to certain roads he deemed as private. However, review of the record reveals that there was sufficient evidence for the chancellor's rulings and that his decisions were not manifestly in error.

¶46. Accordingly, the chancellor's decision is affirmed.

¶47. **JUDGMENT AFFIRMED.**

**SULLIVAN AND PITTMAN, P.JJ, BANKS, McRAE, ROBERTS AND WALLER, JJ., CONCUR. PRATHER, C.J., AND MILLS, JJ., NOT PARTICIPATING.**

1. The Board also identified the following as an issue: ARE PUBLIC ROADS DEDICATED BY PETITION AS SET FORTH IN SECTION 65-7-57, MISSISSIPPI CODE OF 1972 PRESUMED TO BE PUBLIC? However, the Board stated in their brief that they "stipulate and agree with the chancellor that public roads that are dedicated by Section 65-7-57, Mississippi Code of 1972 are presumed to be public." They further indicated that this issue was only raised "to ratify the chancellor's findings and conclusions and to request the Court to affirm said statute and Ruling of the Court." Accordingly, this issue will not be addressed by this Court.

2. The appellant's brief indicated the statute section as 19-3-1 in their statement of the issues, however, the body of their brief cites and discusses § 19-3-41.

3. Although the Board identified the John Hickman Road as being one of the roads that was erroneously determined to be private, the chancellor's ruling in fact denotes this road as public. Accordingly, this road will not be discussed in this opinion.

4. Pursuant to Miss. Code Ann. § 19-3-42 (1995) the board of supervisors is authorized to "maintain private gravel or shell roads or driveways to private residences if such roads or driveways are used for school bus turnarounds." Additionally, this statute provides that the board's approval "shall be valid and effective for the period of time that a turnaround is anticipated for use, but in no event for a period greater than one (1) year."

5. The school bus turnaround aspect of this road was addressed above.

6. The chancellor's Ruling indicates that "[t]he documents indicate that this road was petitioned in 1978 or 1979, and although the petition has not been found in the Minutes, there has been Board action on July 25, 1994, approving the paving of same."